<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROBIN JOACHIM DARTELL, et al.,** Individually and on Behalf of All Others Similarly Situated, *Plaintiffs*, v. **TIBET PHARMACEUTICALS, INC., et al.,** *Defendants*. | **Civil Action No. 14-3620** **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE,**

This matter comes before the Court by way of Plaintiffs Obasi Investment Limited, Jingli Shao, Robin Dartell, Lixin Wu, and Jason Helton's (collectively "Plaintiffs") motion for class certification. Dkt. No. 156. Defendants Acquavella, Chiarelli, Shuster, Berkower & Co., LLP, L. McCarthy Downs III, and Hayden Zou oppose the motion on typicality and adequacy grounds. Dkt. No. 168. For the reasons stated below, the motion is granted and the class will be certified.

**I.   BACKGROUND**

This matter concerns allegedly false statements and material omissions contained in Tibet Pharmaceuticals, Inc.'s ("Tibet") registration statement and prospectus issued in connection with its initial public offering on January 24, 2011. Tibet owns two subsidiaries: China Tibetan Pharmaceuticals Limited, incorporated in Hong Kong, and Yibo Information Consulting (Shenzen) Company Ltd., incorporated in China.[1]

---

[1] Other defendants are included in this matter, including defendants who signed the Registration Statement and Prospectus or otherwise approved of its contents. Defendant Taylor

1

The proposed class period extends from January 24, 2011, the date of Tibet's misstatements, to April 3, 2012, when Tibet stock halted trading on NASDAQ and the stock plummeted in value. Allegedly, Tibet made several misrepresentations by (1) overstating Tibet's assets, (2) misrepresenting Tibet's indebtedness, and (3) failing to disclose a series of adverse court judgments for millions of dollars entered against Tibet and the freezing of the assets of Tibet's sole operating entity.

Tibet is a British Virgin Islands Corporation with its headquarters and operations located in China. In its initial public offering ("IPO"), Tibet sold three million shares of Tibet common stock for $16.5 million to investors. Though Tibet's registration statement and prospectus represented Tibet as financially sound, it had actually defaulted on $4.54 million in loans from the Agricultural Bank of China. On September 10, 2010, a Chinese court entered judgment against Tibet for $4.54 million. When Tibet failed to pay, the court entered an order permitting the Agricultural Bank of China to seize all Tibet's assets. Tibet's Registration Statement and Prospectus for its IPO did not disclose any of this information.

On February 17, 2012, the Agricultural Bank of China began to auction off the assets of Yunnan Tibetan, Tibet's operating subsidiary. The same day, a Chinese website disclosed, in Chinese language, that Tibet's assets were being sold. On February 27, 2012, Tibet issued a press release stating that the announcement of the public auction was "untrue and incorrect." On April

---

Z. Guo has been Tibet's Chief Executive Officer and Director since 2010. Defendant Hong Yu has been Tibet's Chairman of the Board of Directors since April 2010. Defendant Sabrina Y. Ren has served as Tibet's Chief Financial Officer since 2010. Defendants Wenbo Chen, Youhang Peng, and Solomon Chen all served as Tibet Directors since April 2010. All of these individuals signed the Registration Statement. Defendants L. McCarthy Downs III and Hayden Zou were designated observers for Anderson & Strudwick to Tibet's Board of Directors in connection with the IPO. Finally, Acquavella Chiarelli, Shuster, Berkower & Co. LLP is a certified public accountant and advisory firm headquartered in New Jersey that provided an unqualified audit opinion in Tibet's Registration Statement and Prospectus.

3, 2012, NASDAQ halted the trading of Tibet's stock for "additional information requested." Tibet failed to provide that information. Its stock was subsequently delisted on NASDAQ and began trading over the counter on pink sheets on April 27, 2012. The stock became essentially worthless, dropping to $.01 per share.

The following class representatives sought class certification initially: Obasi Investment Limited, Jingli Shao, Lixin Wu, Jason Helton, and Robin Dartell. Rosen Decl. Exs. 2-6. Sean Carithers was subsequently proposed as an additional class representative to provide a class representative who purchased securities directly from the IPO. Fuks Decl. Ex. 1. All of these class representatives purchased shares of Tibet during the proposed class period.

Defendants moved to dismiss in July 2014. Dkt. Nos. 96, 101-102, 104. Those motions were denied. Dkt. No. 156. Subsequently, the parties engaged in class discovery and filed the instant motion for (and opposition to) class certification.

Defendants oppose class certification on two grounds. First, they argue the proposed lead plaintiffs are not typical of the class because (1) no lead plaintiff has produced evidence showing they purchased shares traceable to the IPO and (2) no lead plaintiff suffered damages, because they purchased their shares over a year after the IPO and weeks after information concerning the fraud was disclosed, so the market had already incorporated the information concerning the fraud. Second, Defendants oppose certification of particular proposed class representatives because the timing of their purchase, their performance in depositions, and a variety of credibility issues preclude them from adequately representing the class. The Court addresses these issues in turn.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets forth the requirements that must be fulfilled before a case may proceed as a class action. There are four basic prerequisites for class action treatment:

3

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These are known as the numerosity, commonality, typicality, and adequacy requirements. See In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009). Plaintiffs must also meet the requirements of one of Rule 23(b)'s provisions. Id. Here, Lead Plaintiffs seek certification under Rule 23(b)(3), which permits certification only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008).

A plaintiff "must affirmatively demonstrate" that Rule 23's requirements are satisfied, Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011), by providing actual evidentiary proof that the requirements are met. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). Therefore, a reviewing court must conduct a "rigorous analysis" of each of Rule 23's requirements, Dukes, 131 S. Ct. at 2551, and must be satisfied that each requirement is established by a preponderance of the evidence. In re Blood Reagents Antitrust Litig., 783 F.3d 183, 187 (3d Cir. 2015). This analysis frequently overlaps with "the merits of the plaintiff's underlying claim." Dukes, 131 S. Ct. at 2551. The merits may be considered, however, "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194-95 (2013). To the extent facts relevant to the class certification question are in dispute, it is appropriate for the

4

Court to probe beyond the complaint. Wal–Mart Stores, Inc., 131 S. Ct. at 2551-52. The Court should not merely accept allegations in the complaint without inquiry. See In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 603 (3d Cir. 2009).

### III.   ANALYSIS

#### A.   Uncontested Class Certification Requirements

This matter alleges securities violations under Section 11 and Section 12. See 15 U.S.C. § 77k(a); 15 U.S.C. § 77*l*(a)(2). To establish a Section 11 claim, Plaintiffs must show that Tibet's registration statement "(1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact 'necessary to make the statements therein not misleading." Cal. Pub. Employees Ret. Sys. v. Chubb Corp., 394 F.3d 126, 167 (3d Cir. 2004) (quoting 15 U.S.C. § 77k(a)). "To state a prima facie claim under Section 12(a)(2), the plaintiff must allege the purchase of securities pursuant to a materially false or misleading prospectus or oral communication." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269-70 (3d Cir. 2006). Section 15 also extends liability to anyone "who controls a violator of Section 11 or Section 12." Id. at 284 (citing 15 U.S.C. § 77o). It is uncontested that Plaintiffs are numerous and that evidence of the relevant disputes is predominantly common.

#### 1.   Numerosity

Numerosity is met here. Numerosity requires that "the class is so numerous that joinder of all members is impracticable." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998); Fed. R. Civ. P. 23(a)(1). Generally, if the "potential number of plaintiffs exceeds 40, the [numerosity] prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (holding class of 67 people was sufficiently numerous). Here, there were three million shares of stock sold in the IPO, and the press release published by

5

Plaintiffs' Counsel seeking individuals to serve as class representatives received approximately 166 certifications from class members who claimed to have sustained losses investing in Tibet stock during the Class Period. Rosen Decl. ¶ 8.

### 2. Commonality

A proposed class meets the commonality requirement if "there are questions of law or fact common to the class." Prudential, 148 at 309; Fed. R. Civ. P. 23(a)(2). "Commonality does not require an identity of claims or facts among class members; [i]nstead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Loewen, 233 F.R.D. at 162; Johnston v. HBO Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001). "Where [a]ll plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." In re Schering-Plough Corp./ENHANCE Sec. Lit., No. 08-397, 2012 WL 4482032, at *4 (D.N.J. 2012).

Many common questions of law and fact exist here. For example, both the existence of misrepresentations in the Registration Statement and Prospectus and the adequacy of Acquavella's audit investigation are common disputes to be resolved for all members of the class. The Plaintiffs all seek to establish that Defendants provided fraudulent statements and material omissions in their Registration Statement and Prospectus. Commonality is met.

### 3. Predominance

Rule 23(b)(3)'s predominance inquiry requires the Court to determine whether common questions of law or fact predominate over questions affecting only individual class members. "Plaintiffs need not have identical claims to be certified as a class, but if the facts present individual questions these must be outweighed by common ones." Loewen, 233 F.R.D., at 167.

The Supreme Court has found that "Predominance is a test readily met in certain cases alleging consumer or securities fraud." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In cases brought under Section 11, there is no requirement to prove individualized reliance or knowledge of the alleged misrepresentations. In re Constar Int'l. Inc. Sec. Litig., 585 F.3d 774, 784 (3rd Cir. 2009).

Defendants do not challenge predominance here. The essential dispute here is plainly common: whether the Registration Statement and Prospectus contained material misrepresentations. Because Defendants do not point to anything to defeat predominance, and all facially critical issues are common, the Court finds common issues of fact and law predominate in this case.

### B. Contested Class Certification Requirements

#### 1. Typicality

"While commonality 'looks at the relationship among the class members generally,' typicality focuses on 'the relationship between the proposed class representative and the rest of the class.'" In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., No. 05-1151, 2013 WL 396117, at *5 (D.N.J. Jan. 30, 2013) (citing 1 W. Rubenstein, Newberg on Class Actions § 3:26 (5th ed. 2011)). Three requirements must be met in order to satisfy typicality. First, the proposed class representatives' claims must "[arise] from the same event or practice or course of conduct" and be "based on the same legal theory" as the claims of the class. Baby Neal, 43 F.3d at 58; see also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004). Second, class representatives' claims "must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." Schering Plough, 589 F.3d at 599. Finally, "the interests of the

class and the class representatives" must be aligned "so that the latter will work to benefit the entire class through the pursuit of their own goals." Prudential, 148 F.3d at 311.

Defendants challenge the typicality of the proposed class representatives on two grounds. First, Defendants argue that the class representatives cannot trace their shares to the IPO. Second, the proposed class representatives purchased their shares after purported corrective disclosures on February 17, 2012 and February 27, 2012. The proposed class representatives, therefore, cannot be typical of the class because they are subject to the unique defense that they do not have standing.

Neither of these arguments preclude class certification here because Plaintiffs have provided an alternate class representative to which these arguments do not apply. Proposed lead Plaintiff Sean Carithers purchased 6,000 shares of Tibet stock in the IPO directly from Anderson & Strudwick. Fuks Decl. Ex. 1. The timing and directness of his purchase ensures that at least one class representative will be able to represent the class, even if Defendants' arguments that post-IPO purchases cannot be traced to the IPO were to prevail on summary judgment.

Furthermore, Defendants' argument that Plaintiffs cannot trace their shares to the IPO fails at this stage. "By its terms, Section 11 provides that 'any person acquiring' a security issued pursuant to a materially false registration statement may sue (unless the purchaser knew about the false statement)." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 n.7 (3d Cir. 2006) (citing 15 U.S.C. § 77k(a)); see also In re FleetBoston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 345 (D.N.J. 2008) (discussing tracing requirement). The Third Circuit has stated that shares purchased in the secondary market—i.e. not the public market—"would not be linked to a registration statement filed during the class period, and the § 11 claim would fail." Shapiro v. UJB Fin. Corp., 964 F.2d 272, 286 (3d Cir. 1992), as amended (May 27, 1992). With respect to shares in the public

8

market, "[t]racing may be established either through proof of a direct chain of title from the original offering to the [plaintiff] ... or through proof that the [plaintiff] bought her shares in a market containing only shares issued pursuant to the allegedly defective registration statement." In re IPO, 471 F.3d at 31 n. 1 (alteration and ellipses in original) (quotation marks omitted); see also In re Smart Techs., Inc. S'holder Litig., 295 F.R.D. 50, 61 (S.D.N.Y. 2013).

As of the date of the Registration Statement and Prospectus, 11,812,500 shares of Tibet stock were outstanding. Three million shares were subsequently issued in the IPO. 33,400 shares were then issued to Trilogy Partners. Lockup agreements precluding sale of the restricted shares expired on April 24, 2011 and August 2, 2011, and Defendants claim that no class representative can trace their stock to the public offering because there are over fourteen million shares of Tibet stock.

Plaintiffs reply that the public market for Tibet securities contained only shares issued during the IPO. There was no public market for Tibet shares prior to the IPO. Fuks Decl. Ex. 2. All shares issued outside of the IPO were restricted stock, which required (1) a legal opinion proving exemption from registration requirements and (2) removal of the restricted legend or filing of registration statement concerning the stock in order to sell the shares on the public stock market. No registration statement for these shares was filed with the SEC, nor was any form 4 filed evidencing insider sales of stock. Defendants produce no contrary evidence to show that any of the restricted shares were sold or could be sold on the public market. As such, Plaintiffs have produced evidence indicating that the only shares available on the public market were those issued in the IPO.[2] See Perry v. Douyuan Printing, Inc., 2013 WL 4505199, at *10-11 (S.D.N.Y. Aug.

---

[2] To the extent additional information on this issue becomes available, the parties may revisit this issue on summary judgment. See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 n.7 (3d Cir. 2006) ("If, as appellees suggest, plaintiffs have misrepresented the circumstances

22, 2013) (where only one registration statement was issued on behalf of a company, all shares could be traced to that statement); In re Smart Technologies, Inc. S'holder Litig., 295 F.R.D. 50, 61-62 (S.D.N.Y. 2013) ("Put simply, any individual who can show that his or her shares were issued under/registered to the allegedly defective registration statement—regardless of whether the shares were acquired directly from the issuer or in the aftermarket—has standing to pursue a section 11 claim.").

Defendants' second argument that the proposed class representatives (other than Mr. Carithers) purchased their shares after certain corrective disclosures in this case similarly does not prevail because Defendants have not shown that either of the purported disclosures were corrective.[3]

That "the plaintiff knew of the untruth or omissions at the time of his or her acquisition of the security," is a dispositive affirmative defense to a section 11 claim. In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 n.1 (2d Cir. 2007). If such a defense exists for the proposed class plaintiff, but not the class, it may render that representative not typical. See Klein v. A.G. Becker Paribas Inc., 109 F.R.D. 646, 652 (S.D.N.Y. 1986); cf. New Jersey Carpenters Health Fund v. Residential Capital, LLC, 272 F.R.D. 160, 170 (S.D.N.Y. 2011), aff'd 477 F. App'x 809 (2d Cir. 2012).

Two potential disclosures are disputed here.[4] One occurred on February 17, 2012, when a Chinese website posted, in Chinese, that Tibet's assets were being auctioned. The second occurred

---

of their stock purchases and do not in fact have standing, appellees can raise that matter at the summary judgment stage after discovery.").

[3] As before, Plaintiffs' alternate class representative indisputably purchased shares before any corrective disclosure, so this dispute concerns only which proposed class representatives will be approved, not whether the class may be certified.

[4] Plaintiffs argue that the corrective disclosure actually occurred on April 3, 2012, when NASDAQ halted trading in Tibet stock.

10

on February 27, 2012, when Tibet issued a press release announcing that the company would conduct an investigation into allegations that its assets were being auctioned, and denounced those allegations as false.

Defendants' only citation in support of the alleged February 17, 2012 corrective disclosure is Plaintiff's Amended Complaint at paragraph 58. Dkt. No. 50. This paragraph merely states that a Chinese-language website announced that Tibet's assets were being auctioned. Court actions in China were also published on the Supreme People's Court website. Am. Compl. ¶ 61. Subsequently, Tibet's chairman denied the rumors of a public auction. Id. ¶ 59. The Court is not convinced that this disclosure on a Chinese-language website is sufficient to constitute a corrective disclosure, especially where that disclosure is repudiated by management in an official press release shortly thereafter. See In re Fuwei Films Sec. Litig., 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (holding that a Chinese-language article in Chinese news media did not constitute public information). Defendants point to no evidence that this disclosure actually was known to the relevant public or that the market quickly priced in the disclosure. At class certification, the Court will not manufacture facts, and here, no facts show that the disclosure in Chinese on a website constituted a corrective disclosure.

Furthermore, these rumors were subsequently denied by the relevant company management in the February 27, 2012 press release. Far from being a corrective disclosure of all allegedly actionable fraud, the February 27, 2012 press release entrenched the alleged fraud by stating that the rumors were "untrue and incorrect" and were the result of a completely "mistaken report." Am. Compl. ¶ 59. The company announced that it would conduct a further investigation, but there is no indication that the outcome of that investigation was already known. The Court therefore cannot find on the information available at this stage that either the February 17, 2012

11

website posting or the February 27, 2012 press release constituted corrective disclosures which would preclude certification of a class following those disclosures. Defendants' argument that Plaintiffs' class representatives are not typical fails.[5]

### 2. Adequacy

Defendants contest whether the proposed lead plaintiffs are adequate to represent the class. Rule 23(a)(4) permits class certification when the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria to determine adequacy. "First, the adequacy of representation inquiry tests the qualifications of the counsel to represent the class… Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent." Prudential, 148 at 312.

There is no contest that Plaintiffs' counsel is adequate to represent the class in this matter. See Rosen Decl. Ex. 1. Defendants do, however, raise a variety of concerns about individual class representatives. Robin Dartell purchased shares after the misrepresentations were disclosed. Jason Helton posted a comment on a message board indicating Tibet was a scam (Mr. Helton claims this was a copy and paste of someone else's message or a rhetorical response). Lixin Wu has some difficulty understanding and responding in English. Jingli Shao failed to cooperate with certain questions from counsel, including his other email addresses and stock trades unrelated to Tibet, and did not know certain details of the case. Finally, Edmund Obasi sought to pump up Tibet stock through a variety of internet postings on message boards using different accounts, and claimed he was "al auditor" in a comment (he claims this was a typo).

---

[5] Finally, the date of any corrective disclosure and whether such disclosure precludes recovery under Section 11 is a common question, not an individual one. See In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 785 (3d Cir. 2009). This question is one that is cleanly amenable to resolution on a classwide basis.

None of these issues are substantial enough to preclude any of the class representatives from effectively representing the class here. The timing of Robin Dartell's purchase coincides with many others in the class and does not preclude him from being adequate. Defense counsel's concerns about Lixin Wu and Jingli Shao seem to stem only from minor difficulties during depositions which do not rise to the level of precluding them from representing the class. Jason Helton and Edmund Obasi both sought to profit from Tibet stock, despite there being some indicator that the stock was of questionable quality. But they both have explanations for their activity, and none of their activity rises to a level sufficient to destroy their credibility. The Court therefore rejects Defendants' adequacy challenge. This class will be certified with the following lead plaintiffs: Obasi Investment Limited, Jingli Shao, Lixin Wu, Jason Helton, Robin Dartell, and Sean Carithers.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to certify the class. An appropriate order accompanies this opinion.

Date: February 22, 2016                     /s/ *Madeline Cox Arleo*
                                            **Hon. Madeline Cox Arleo**
                                            **UNITED STATES DISTRICT JUDGE**