**SHER TREMONTE LLP**
Scott Cargill, Esq. (No. 007991999)
80 Broad Street, 13th Floor
New York, New York 10004
*Attorneys for Defendant Hayden Zou*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN JOACHIM DARTELL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> TIBET PHARMACEUTICALS, INC, HONG YU, TAYLOR Z. GUO, SABRINA Y. REN, WENBO CHEN, YOUHANG PEN, SOLOMON CHEN, ANDERSON & STRUDWICK INCORPORATED, STERNE AGEE GROUP, INC., HAYDEN ZOU, L. MCCARTHY DOWNS III and ACQUAVELLA, CHIARELLI, SHUSTER, BERKOWER & CO., LLP, <br><br> Defendants. | Civil Action No.: 14-CV-03620 (JMV) (JBC) <br><br><br><br> **DEFENDANT HAYDEN ZOU'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |

Pursuant to Local Rule 56.1(a) of the Local Civil and Criminal Rules of the United States District Court for the District of New Jersey, and the Honorable John Michael Vazquez's Motion and judicial preferences and individual practices concerning motions, Defendant Hayden Zou ("Zou"), by his undersigned counsel, respectfully submits in support of his Motion for Summary Judgment the following statement of material facts as to which there is no genuine issue to be tried.

## FACTUAL ALLEGATIONS

**Tibet Pharmaceuticals**

1.      Defendant Tibet Pharmaceuticals, Inc. ("Tibet") is a holding company incorporated in the British Virgin Islands.  *See* Docket Entry # 50 [Consolidated First Amended Class Action Complaint ("Complaint")] ¶ 23; Declaration of Scott Cargill in Support of Defendant Hayden Zou's Motion for Summary Judgment dated June 30, 2016 ("Cargill Decl.") **Exhibit 1** [January 18, 2011 Tibet Prospectus ("Prospectus")] at PDF009.[1]

2.      Tibet's business, specialty pharmaceutical company focusing on research, development, manufacturing and marketing of modernized Tibetan medicines, is exclusively conducted through its operational entity, Yunnan Tibetan.  *See* Complaint ¶ 23; Cargill Decl. **Exhibit 1** [Prospectus] at PDF004, PDF065.

3.      Nondefendant China Tibetan Pharmaceuticals Limited ("China Tibetan") is a wholly-owned subsidiary of Tibet that was incorporated in Hong Kong and does not own any assets or conduct any operations.  *See* Complaint ¶ 23; Cargill Decl. **Exhibit 1** [Prospectus] at PDF117, PDF134.

4.      Tibet "owns all of the outstanding capital stock" of China Tibetan and thus, exercises complete control over the subsidiary.  Cargill Decl. **Exhibit 1** [Prospectus] at PDF009, PDF036, PDF043.

---

[1]      All page number references to the Prospectus refer to the page number of the .PDF file and not the printed number on the bottom of any page of the Prospectus.  For clarity the PDF page numbers have been stamped on the lower right hand of the document (i.e., PDF001-PDF146). PDF page numbers have also been stamped on Exhibits 6-9 and 20 to the Cargill Declaration.

5.      China Tibetan was formed as a limited liability company for the sole purpose of facilitating the registration of common shares of Tibet in connection with its Initial Public Offering ("IPO").  *See id.*

**Tibet's IPO**

6.      On January 24, 2011, Tibet's IPO was completed for 3 million shares.  *See* Complaint ¶ 46; Cargill Decl. **Exhibit 1** [Prospectus] at 1, **Exhibit 2** [NASDAQ Approval Letter], **Exhibit 3** [A&S Wiring Instructions Memorandum], **Exhibit 4** [SunTrust Bank Email].

7.      In connection with the IPO, Tibet hired Anderson & Strudwick Incorporated ("A&S") to serve as its placement agent and underwriter.  *See* Complaint ¶ 2, 32; Cargill Decl. **Exhibit 1** [Prospectus] at PDF001, PDF012, PDF035, PDF108, PDF146.

8.      A&S and Tibet were initially represented in connection with the IPO by Kaufman and Canoles, P.C.  *See* Cargill Decl. **Exhibit 5** [Excerpts from the deposition transcript of L. McCarthy Downs III ("Downs Depo. Tr.")] at 46-47, **Exhibit 1** [Prospectus] at PDF108, PDF111.

9.      In November 2010, Kaufman and Canoles, P.C resigned as counsel to the placement agent and underwriter and Anslow & Jaclin LLP was retained by A&S as replacement counsel.  *See* Cargill Decl. **Exhibit 5** [Downs Depo. Tr.] at 57-59.

10.     Tibet continued to be represented by Kaufman and Canoles, P.C. throughout the IPO.  *See* Cargill Decl. **Exhibit 1** [Prospectus] at PDF108, PDF111.

11.     Tibet was also represented by DeHeng Law Offices with respect to People's Republic of China laws and Iu, Lai & Li Solicitors & Notaries with respect to the laws of Hong Kong.  *See* Cargill Decl. **Exhibit 21** [IPO Opinion Letters].

12.     Tibet's accountants and auditors in connection with the IPO were Aquavella

Chiarelli, Shuster, Berkower & Co. LLP.  *See id.*

13.     On May 14, 2010, Tibet filed an S-1 Registration Statement with the Securities

and Exchange Commission ("SEC") "attaching a prospectus to be used in connection with the

initial public offering" (the "S-1").[2]  Cargill Decl. **Exhibit 6** [S-1 excerpts] at PDF003.

14.     The S-1 was signed by Tibet's Chairman of the Board of the Directors

("Chairman"), Hong Yu, Chief Executive Officer, Taylor Z. Guo, Chief Financial Officer,

Sabrina Y. Ren, and Directors Wenbo Chen, Youhang Peng, and Solomen Chen.  *See id.* at

PDF006-007.

15.     The signatories of the S-1 certified that they were signing the statement

"[p]ursuant to the requirements of the Securities Act of 1933."  *Id.*

16.     Zou is not a signatory to the S-1 and is not listed in the "Management" section of

the prospectus attached thereto as either an officer or a director of Tibet.  *See id.* at PDF005-007.

17.      All of the directors and officers listed in the prospectus attached to the S-1 as

directors and officers of Tibet are signatories to the S-1.  *See id.*

18.     From July 19, 2010 through December 6, 2010, Tibet filed a series of nine "Pre-

Effective Amendment[s]" of the S-1 Registration Statement ("S-1 Amendments") with the SEC.

*See* Cargill Declaration **Exhibit 7** [S-1 Amendments excerpts].

---

[2]      The S-1 listed the name of registrant as "Shangra-La Tibetan Pharmaceuticals, Inc."
Cargill Decl. **Exhibit 6** [S-1 excerpts] at 1.  The name of the registrant was subsequently
changed to "Tibet Pharmaceuticals, Inc."  Cargill Decl. **Exhibit 7** [S-1 Amendments].

19.     Each S-1 Amendment was signed by Mr. Guo as Tibet's Principal Executive Officer and Ms. Ren as Tibet's Principal Accounting and Financial Officer.  *See id.* at PDF006, PDF013, PDF019, PDF025, PDF031, PDF037, PDF046, PDF052, PDF058.

20.     Mr. Guo also signed each of the S-1 Amendments as "Atty in Fact" [sic] on behalf of Tibet's Chairman and other directors listed above.  *Id.*

21.     Again, each of the S-1 Amendments state they are being signed "[p]ursuant to the requirements of the Securities Act of 1933."  *Id.*

22.     Zou is not a signatory the S-1 Amendments nor is he listed in any of the prospectuses attached thereto as management or as either a director or an officer of Tibet.[3]  *Id.*

23.     In response to several of the S-1 Amendments the SEC wrote directly to Mr. Guo as Tibet's Chief Executive Officer with a copy to the placement agent and underwriter's counsel providing comments and proposed revisions to be incorporated into Tibet's registration statements.  *See* Cargill Decl. **Exhibit 8** [SEC Letters] at PDF001, PDF008, PDF010, PDF012, PDF014-015, PDF017-018.

24.     These letters were not addressed to Zou nor was Zou copied on them.  *See id.*

25.     On December 16, 2010, Tibet filed its Tenth Pre-Effective Amendment of the S-1 Registration Statement with the SEC ("Final Registration Statement").  *See* Cargill Decl. **Exhibit 9** [Final Registration Statement excerpts].

26.     Zou is not a signatory to the Final Registration Statement nor is he listed in the prospectuses attached thereto as management or as either a director or an officer of Tibet.  *See id.* at PDF004-005.

---

[3]     Each of the S-1 Amendments attaching a revised prospectus list the same directors and officers of Tibet as set forth above.  *See* Cargill Decl. **Exhibit 7** [S-1 Amendments excerpts].

27.     On December 28, 2010, the SEC declared the Final Registration Statement effective.  *See* Cargill Decl. **Exhibit 10** [SEC Effectiveness Declaration].

28.     On January 18, 2011, Tibet filed a Form 8-A registering Tibet pursuant to the Securities Exchange Act of 1934 with the SEC.  *See* Cargill Decl. **Exhibit 11** [Form 8-A].

29.     The Form 8-A was amended four days later on January 21, 2011.  *See* Cargill Decl.  **Exhibit 12** [Form 8-A amendment].

30.      Both the Form 8-A and the Form 8-A amendment were signed by Mr. Guo pursuant to "the Securities of Exchange Act of 1934."  S*ee* Cargill Decl. **Exhibit 11** at 4, **Exhibit 12** at 4.

31.     Zou is not a signatory of the Form 8-A or its amendment.  *Id.*

32.     On January 18, 2011, Tibet also filed with the SEC an amended prospectus ("Prospectus" and together with the Final Registration Statement, the "Offering Documents").[4] *See* Cargill Decl. **Exhibit 1** [Prospectus].

33.      In sum, none of the Offering Documents, or any of the other filings with the SEC, list Zou as a director, officer or management of Tibet and none are signed or otherwise certified by Zou.  *See* Cargill Decl. **Exhibit 1** [Prospectus], **Exhibit 6** [S-1 excerpts], **Exhibit 7** [S-1 Amendments excerpts], **Exhibit 9** [Final Registration Statement], **Exhibit 11** [Form 8-A], **Exhibit 12** [Form 8-A amendment].

34.     As to Zou, the Prospectus states that "Mr. Hayden Zou [is] serving as our Placement Agent's *observer[ ] to our Board of Directors*"  and that "*observers will not be able to vote.*"  *See* Cargill Decl. **Exhibit 1** [Prospectus] at PDF040, PDF092 (emphasis added).

---

[4]     The prospectus was amended pursuant to 17 CFR Part 230 Rule 424(b)(3).

**The Complaint**

35.     The Consolidated First Amended Class Action Complaint ("Complaint") asserts that Tibet Offering Documents' contained allegedly false statements about Tibet's financial condition.  *See* Complaint ¶¶ 2, 47.

36.      In particular, Plaintiffs assert that on September 10, 2010, a Chinese court entered judgment against Yunnan Tibet for $4.54 million after it had defaulted on several secured loans.  *See id.* ¶ 3.

37.     And that Yunnan Tibet allegedly failed to repay its debt as required by the September 10, 2010 court judgment, prompting the court to enter an order on January 10, 2011, freezing all of Yunnan Tibet's assets.  *See id.* ¶ 48.

38.      The Complaint also alleges that the Offering Documents overstated Tibet's assets, failed to disclose the court judgment and falsely stated that Tibet was current on its indebtedness.  *See id.*

39.     Plaintiffs contend that if Tibet actually had the asset and cash figures that were reported in the Offering Documents, then Yunnan Tibetan would not have defaulted on the three loans.  *Id.* ¶ 63.

**Plaintiffs' False Allegations against Zou**

40.     The Complaint alleges that "all, or substantially all, of the net proceeds from the IPO is still deposited in China Tibetan's HSBC bank account in Hong Kong"; that Zou "has total control of the IPO proceeds," and that Zou may "significantly influence the outcome of the matters submitted to the Board of Directors."  *Id.* ¶ 79.

41.     Documents produced in discovery, including a memorandum from A&S providing wiring instructions to SunTrust Bank (the escrow agent for the IPO proceeds)

establishes that the proceeds were not transferred into the China Tibetan bank account.  *See*

Cargill Decl. **Exhibit 3** [A&S Memorandum].

42.     As the A&S wiring instructions, signed by Tibet's CEO, instead state that

$14,420,431.11 in proceeds were to be transferred directly into Tibet's HSBC Hong Kong bank

account and not China Tibetan's bank account as alleged in the Complaint.  *See id.* at

ZOU000088.

43.     On January 24, 2011, Sun Trust Bank confirmed via email that the IPO proceeds

were transferred and released and Tibet's CEO signed a cross-receipt acknowledging the funds

were deposited into Tibet's HSBC Hong Kong bank account.  *See* Cargill Decl. **Exhibit 4**

[SunTrust Bank email] D002271, **Exhibit 5** [Downs Depo. Tr.] at 39.

44.     China Tibetan's bank account records, which were requested from HSBC by Zou

and provided by Zou to Plaintiffs, reveal that indeed no transfers were made to China Tibetan on

the day of the January 24, 2011 IPO.[5]  *See* Cargill Decl. **Exhibit 13** [China Tibetan January-

February 2011 HSBC bank account records] at ZOU000004.

---

[5]     On January 26, 2011, the China Tibetan bank account received a deposit in the amount of $4.1 million.  *See* Cargill Decl. **Exhibit 13** [China Tibetan January-February 2011 HSBC bank account records] at ZOU000004.  The next month $3.8 million was transferred out of this account.  *See id.* at ZOU000006.  There is no evidence in the record establishing the nature of these transactions or where these funds were transferred from or to, however, months later in 10-Q financial filings signed by Tibet's CEO and Chairman, Tibet represented that the IPO proceeds were "net cash" on Tibet's balance sheets and that Tibet had control of the IPO funds.  *See* Cargill Decl. **Exhibit 20** [Form 10-Q excerpts] at PDF007, PDF019, PDF033; **Exhibit 5** [Downs Depo. Tr.] at 103.  Indeed, both the June and September 2011 10-q statements affirmatively state that Tibet had not yet applied the IPO proceeds "to any use" and that Tibet "is holding the [IPO] proceeds in a bank account pending their use."  *See* Cargill Decl. **Exhibit 20** [Form 10-Q excerpts] at PDF015, PDF029.  Zou did not sign these filings nor is he mentioned in them.   *See* Cargill Decl. **Exhibit 20** [Form 10-Q excerpts]. Further, it is undisputed that China Tibetan was controlled by Tibet, that Zou did not make any withdrawals or transfers into or out of the China Tibetan bank account and that Mr. Guo, Tibet's CEO, as well as Tibet's cashier had complete control and oversight over the account and thus, access to the funds contained therein.  *See*

45.      Bank records show that as of August 13, 2014, China Tibetan's bank account contained a total of 14,826.38 HKD (equivalent to approximately $1,900).  *See* Cargill Decl. **Exhibit 14** [China Tibetan Bank August 2014 account records] at ZOU000085.

**Zou's Motion to Dismiss**

46.      On July 1, 2014, Zou filed a motion to dismiss the Complaint.  *See* Docket Entry # 96 [Defendant Hayden Zou's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint, with Prejudice].

47.      In opposing Zou's motion to dismiss Plaintiffs argued that Zou "took control of the entirety of the IPO proceeds" and was liable under Section 11 as a "person performing similar functions" as a director.  *See* Docket Entry # 97 [Memorandum of Law in Support of Defendant Hayden Zou's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint, with Prejudice] at 10.

48.      In denying Zou's motion to dismiss the Court found that Plaintiffs had sufficiently stated Section 11 and Section 15 claims against Zou "*at this early stage of litigation*" due to their allegations that China Tibetan "possesses the proceeds from the IPO"; that Zou was "an individual with 'significant[] influence' over the Board" and that "Zou was paid as any other board member."  *See* Docket Entry # 132 [Opinion and Order Denying Motion to Dismiss] at 11.

49.      Since the Court's ruling on Zou's motion to dismiss, discovery has confirmed the IPO proceeds were never deposited into the China Tibetan bank account, Zou never had an opportunity to influence the Board because no items were given to the Zou for consideration or input (indeed, there is no evidence the Board even ever met) and Zou was not compensated by

---

Cargill Decl. **Exhibit 1** [Prospectus] at PDF009, PDF036, PDF043, **Exhibit 15** [excerpts from the deposition transcript of Hayden Zou ("Zou Depo. Tr.")] at 75-77.

Tibet for his role as "observer" of the Board (or for any other reason). *See* Cargill Decl. **Exhibit 3** [A&S Memorandum], **Exhibits 13-14** [China Tibetan HSBC Bank Account Statements], **Exhibit 15** [Zou Depo. Tr.] at 31-32, 36, 38, 41.

50.     Mr. Down's A&S's other designated "observer" Board also was not aware of any meetings conducted by the Board of Directors and, like Zou, was not called on by the Board to weigh in on any action or decision taken by the Board. *See* Cargill Decl. **Exhibit 5** [Downs Depo. Tr.] at 75, 78-79, 80.

**Zou's Limited Role in the IPO**

51.     Zou's involvement in the IPO was confined to the following:

   a.    Introducing A&S to Tibet's executives who were interested in taking Tibet public; *see* Cargill Declaration **Exhibit 5** [Downs Depo. Tr.] at 75; and

   b.    Assisting Tibet in setting up its corporate structure by preparing documents to help form Tibet's Hong Kong and British Virgin Island subsidiaries; *see* Cargill Declaration **Exhibit 15** [Zou Depo. Tr.] at 18-19; and

   c.    Acting as a liaison between Tibet, A&S and other service providers by providing documents to Tibet executives, obtaining signatures on certain documents from Tibet executives and relaying Tibet's position on certain issues. *See id.* at 30, 57-58.

52.     Discovery has also confirmed that Zou is not (and was not at any time) an officer, director or manager of Tibet and did not a sign or certify any of the Offering Documents. *See* Cargill Decl. **Exhibit 1** [Prospectus], **Exhibit 6** [S-1 excerpts] and **Exhibit 7** [S-1 Amendments excerpts], **Exhibit 9** [Final Registration Statement excerpts].

53.     Zou does not (nor did he ever) have any voting power or veto power in connection with any item submitted to the Board for review. *See* Cargill Decl. **Exhibit 1** [Prospectus] at PDF040, PDF092, **Exhibit 5** [Downs Depo. Tr.] at 80, **Exhibit 15** [Zou Depo. Tr.] at 31-32, 36-37.

54.     Zou never attended a Board meeting, the Board never submitted any item to Zou for his consideration or input and in fact, there is no evidence that the Board ever actually met. *See* Cargill Decl. **Exhibit 5** [Downs Depo. Tr.] at 77-80, **Exhibit 15** [Zou Depo. Tr.] at 31-32, 39-40.

55.     Indeed, Zou never met or spoke to Solomen Chen, Dr. Wenbo Chen or Sabrina Ren – thus, Zou never met or interacted with a majority of Tibet's Board. *See* Cargill Decl. **Exhibit 15** [Zou Depo. Tr.] at 26-27, 29.

56.     Further, Zou was never compensated by Tibet for his role as "observer" or in any other capacity. *Id.* at 41.

57.     Zou was not part of Tibet's management, had no role in the day-to-day operations of Tibet, did not make or have the authority to make decisions on behalf of Tibet. *See* Cargill Decl. **Exhibit 1** [Prospectus] at PDF009, PDF036, PDF043, **Exhibit 6** [S-1 excerpts] and **Exhibit 7** [S-1 Amendments excerpts], **Exhibit 9** [Final Registration Statement excerpts], **Exhibit 5** [Downs Depo. Tr.] at 121-122, **Exhibit 15** [Zou Depo. Tr.] at 31-32, 36, 38.

58.     Zou was not asked to nor did he draft the Offering Documents. Indeed, Zou had no responsibility for verifying the accuracy of the contents of the Offering Documents – such tasks were properly the responsibility of Tibet's executives and directors and the professionals hired by Tibet, including auditors, accountants, and lawyers. *See* Cargill Decl. **Exhibit 15** [Zou Depo. Tr.] at 38, 41, 85; **Exhibit 5** [Downs Depo. Tr.] at 57-58, 111-112.

59.     Prior to the IPO Tibet's auditors, accountants, and lawyers conducted diligence in connection with the IPO and issued opinions letters certifying the diligence they had conducted and approving of the IPO. *See* Cargill Decl. **Exhibit 21** [IPO Opinion Letters].

11

**Zou Invested his Own funds into Tibet**

60.      Contrary to Plaintiffs' alleged theory of this case that Zou was responsible for the

alleged misstatements or material omissions in the Offering Documents, Zou invested his own

money in Tibet, nearly $200,000, and acquired pre-IPO shares of Tibet.  *See* Cargill Decl.

**Exhibit 15** [Zou Depo. Tr.] at 39.

61.      As an early investor, Zou conducted his own diligence by visiting Tibet's

factories and facilities and talking with its CEO Mr. Guo on several occasions.  *See id.* at 23-25.

62.      Despite this diligence, Zou had no knowledge of the alleged Chinese judgment

against Tibet or that its assets were allegedly slated to be sold at the time Offering Documents

were submitted to the SEC.  *See id.* at 85.

**Plaintiffs purchased their Shares after Both of Tibet's Lock-Up Period for Restricted Shares Expired and After Zou sold his pre-IPO Shares**

63.      The IPO introduced 3 million shares of Tibet into the market, however, as set

forth in the Prospectus, there were 11,812,500 common shares outstanding prior to completion of

the IPO offering.  *See* Cargill Decl. **Exhibit 1** [Prospectus] at PDF012.

64.      Of the pre-existing 11,812,500 common shares, the Prospectus provided that the

lock-up period for 9,058,125 restricted shares ended on April 24, 2011 and the lock-up period for

millions of additional pre-IPO shares ended on August 2, 2011.[6]  *See id.* at PDF103.

65.      According to the prospectus, "affiliates" of Tibet that held restricted shares for at

least six month would be entitled to sell their pre-IPO common shares that did not exceed 1% of

the then outstanding common shares and non-affiliates were permitted to sell their pre-IPO

---

[6]      In January 2011 three unnamed investors acquired 30,000 shares of Tibet stock through a
direct purchase from the company and nineteen early investors held a total of 10,983,750
common shares at the time of the IPO.  *See id.* at PDF44, PDF126-127.  Tibet also provided
33,334 pre-IPO shares to one of its consultants Trilogy Capital Partners, Inc. *See id.*

common shares held or at least six month "without regard to any manner of sale, notice provisions or volume limitations."  *Id.* at PDF102.

66.     Thus, by August 2, 2011, after the second lock-up period expired, and at least six months from the IPO had passed, millions of pre-IPO common shares became eligible for sale on the open market. *See id.* at PDF097.

67.     On or about February 24, 2012, following the public announcement that Tibet's assets would be sold at auction, Zou himself sold over 83,400 of his pre-IPO shares of Tibet at a loss. *See* Cargill Decl. **Exhibit 16** [Zou Tax Returns], **Exhibit 15** [Zou Depo. Tr.] at 46-47, 85-86.

68.     On or about March 6, 2012, Zou sold over 26,700 Tibet shares also for a loss. *See id.*

69.     Lead Plaintiffs Shao, Wu, Helton, Obasi, Dartell and Plaintiff Yang did not even start purchasing their shares until after both lock-up periods expired and after Zou sold his pre-IPO shares into the public market. *See* Cargill Declaration **Exhibit 17** [Plaintiffs' brokerage account records].

70.     Further, as part of the settlement submitted to the bankruptcy court for approval, Plaintiffs' counsel submitted a "Notice of Pendency and Settlement of Class Action" to be ordered by the bankruptcy court and distributed to the members of the class noting that the settlement Plaintiffs reached with A&S "represents an average recovery of $1.98 per share of Tibet Stock for the 7.081 million shares outstanding as of April 3, 2012." *See* Cargill Declaration **Exhibit 18** [Notice of Pendency and Settlement of Class Action].

71.     The settlement and Notice of Pendency was approved by the bankruptcy court on October 20, 2015. *See* Cargill Declaration **Exhibit 19** [Order Approving Compromise and

Settlement].  Thus, Plaintiffs have admitted that as of April 3, 2012 at least 7.081 million shares

of Tibet were outstanding in the open market.


Dated: June 30, 2016

                        SHER TREMONTE LLP

                        By:     /s/ Scott Cargill
                                 Scott Cargill
                                 Michael Tremonte
                                 (admitted *pro hac vice*)
                                 Justin J. Gunnell
                                 (admitted *pro hac vice*)

                        80 Broad Street, 13th Floor
                        New York, New York 10004
                        Tel: 212.202.2600
                        Email: scargill@shertremonte.com

                        *Attorneys for Defendant Hayden Zou*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served via e-mail on counsel of record on June

30, 2016:

Laurence M. Rosen,
Esq. Sara Fuks, Esq.
THE ROSEN LAW FIRM,
PA 275 Madison Avenue,
34th Floor New York,
New York 10016
lrosen@rosenlegal.com
sfuks@rosenlegal.com

Nicole B. Liebman, Esq.
Peter J. Larkin, Esq. (admitted pro hac vice)
William J. Kelly, Esq. (admitted pro hac vice)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
150 E. 42nd Street
New York, New York 10017
Nicole.liebman@wilsonelser.com
Peter.larkin@wilsonelser.com
William.Kelly@wilsonelser.com

Robert S. Brener, Esq.
LECLAIR RYAN 1037
Raymond Blvd. Newark,
New Jersey 07102
Email: Robert.Brener@leclairryan.com

A. Neil Hartzell, Esq. (admitted pro hac vice)
LECLAIRRYAN
One International Place, 11th Fl.
Boston, Massachusetts 02110
Email: neil.hartzell@leclairryan.com

Richard J. Davis, Esq.
Carl S. Burkhalter, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, Alabama 35203
Email: rdavis@maynardcooper.com