Exhibit 4

Fed. Sec. L. Rep. P 26062 (C.C.H.), 2009 WL 2119967

CCH Federal Securities Law Reporter

Copyright (c) 2012 CCH INCORPORATED, A Wolters Kluwer business. All rights reserved.

Securities and Exchange Commission

Federal Securities Law Reporter

Securities Exchange Act of 1934

Securities Exchange Act of 1934 Laws and Explanations

Directors, Officers, and Principal Stockholders—Sec. 16

Reports of Directors, Officers, and Principal Stockholders

Ruling: Release

¶ 26,062 RELEASE—INTERPRETIVE RELEASE ON RULES APPLICABLE TO INSIDER REPORTING AND TRADING RELEASE NO. 34-18114, SEPTEMBER 23, 1981, 46 F. R. 48147.

2014

Release—Interpretive Release on Rules Applicable to Insider Reporting and Trading Release No. 34-18114, September 23, 1981, 46 F. R. 48147.

Release No. 34-18114, September 23, 1981, 46 F. R. 48147.

**17 CFR 241.18114.** ACTION: Publication of staff interpretations.

SUMMARY: The Commission has authorized the issuance of this release setting forth the views of its Division of Corporation Finance on various interpretive questions regarding the rules promulgated under Sections 16(a) and 16(b) of the Securities Exchange Act of 1934. These views are being published to resolve certain recurring issues that arise under the rules and to establish uniform interpretations for the benefit of those persons subject to their requirements.

FOR FURTHER INFORMATION CONTACT: Persons with specific questions concerning the subject matter of this release should contract Michael R. Kargula or William E. Toomey, (202) 272-2573, Office of Chief Counsel, Division of Corporation Finance, Securities and Exchange Commission, 500 North Capitol Street, Washington, D. C. 20549.

SUPPLEMENTARY INFORMATION: Section 16 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. 78a et seq.] was designed to provide the public with information on insider[1] securities transactions and holdings and to deter insiders from profiting on short term trading transactions in the securities of their corporations on the basis of undisclosed information. The section was enacted primarily in response to abuses, described in detail in the legislative history of the Exchange Act,[2] where insiders with advance knowledge of facts which would produce a rise or fall in the market value of securities of their companies bought and sold such securities as the circumstances warranted to their personal advantage. On occasion, insiders actually manipulated the market price of their stock by causing a corporation to follow financial policies calculated to produce sudden changes in market prices in order to obtain short swing profits. To combat these practices,

Congress enacted Section 16 to require reports of securities transactions by insiders and to provide for the recovery of any short swing profits.[3]

Congress believed prompt publicity to be a potent weapon in the effort to curb the abuse of inside information. Thus, Section 16(a) requires insiders to file public reports with respect to transactions in the equity securities of their corporations. This publicity was intended to encourage voluntary maintenance of proper fiduciary standards by those in control of corporations and at the same time give public investors information as to purchases and sales by insiders, which might in turn indicate their private opinions as to the prospects of the company.[4] In addition, the reports may reveal insider purchases and sales of securities which are subject to the profit recovery provisions of Section 16(b) of the Exchange Act. Section 16(b) provides that any profit realized by an insider as a result of a purchase and sale or sale and purchase of an equity security of the insider's company made within a six-month period shall inure to the company.[5] The intent of this section is to deprive officers, directors and substantial stockholders of the incentive to utilize their positions to trade in the securities of their companies on the basis of inside information.

The Commission has general rulemaking power under the Exchange Act to interpret and define statutory provisions and to exempt securities from any provision of the Act.[6] In addition, it has specific power under Section 16(b) to exempt from that subsection "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." Since 1934, the Commission has exercised this authority by adopting a number of rules designed to implement and administer the insider trading and reporting provisions of Section 16. During this period, the staff has responded to a great many requests for interpretations of these rules as applied to particular facts.

In an effort to provide guidance to the public, and as part of a continuing program to clarify and simplify the application of the various rules administered by the Division, a number of these interpretations have been selected for publication in this release. The interpretations selected are not exhaustive. Rather, they represent fundamental, recurring questions which arise under the rules. Most of the illustrations used in the release represent actual inquiries received by the staff. While the Commission has authorized the issuance of this release, the views expressed are those of its Division of Corporation Finance.

Although many of the issues dealt with in this release have previously been addressed by the staff in public interpretive letters, the release clarifies and, in some instances, revises certain positions expressed in those letters. Any previous staff interpretations which are contrary to those set forth in this release should be regarded as superseded by this release. Similarly, the views expressed in previous interpretive letters on issues which are not addressed by this release, may still be considered to represent the staff's position on the questions raised. To the extent that particular facts and circumstances are substantially similar to those set forth in this release, interested persons may rely on the views expressed herein and need not seek individual interpretive advice.

The Commission is hopeful that the issuance of this release will reduce the need for members of the public to request interpretive advice from the staff regarding the rules in question. It should be noted, however, that the staff is considering possible amendments to the rules promulgated under Sections 16(a) and 16(b), particularly Rule 16b-3, and invites interested persons who wish to express an opinion on the rules, or on the interpretations contained in this release to submit their views in writing.

The staff routinely responds to interpretive requests concerning the rules adopted under both Sections 16(a) and 16(b). However, the staff declines to take no-action or interpretive positions on questions involving the scope of liability under Section 16(b). Whether liability under Section 16(b) will result from particular transactions can only be determined on the basis of the facts in each case in an appropriate action brought by the issuer or a security holder.[7]

This release considers first the reporting rules under Section 16(a) with a prefatory discussion of concepts and definitions, some of which are essential to an understanding of the Section 16(b) rules which follow. The rules are treated simply in their numerical order, and no attempt has been made to group them by function. A table of contents follows.

17 CFR Part 241 is amended by adding this release thereto.

treasurer, secretary, comptroller, and any other person who performs for an issuer, whether incorporated or unincorporated, functions corresponding to those performed by the foregoing officers.[11] The determination whether a particular individual is an officer hinges on an examination of all the relevant facts. Generally, it is not difficult to identify a company's principal officers by their traditional titles and functions. However, an employee who does not possess a title may nevertheless be an officer because of the significant functions he performs; similarly, an employee who holds a title may nonetheless not be an officer because his functions and duties are insignificant, despite his formal position. The staff generally takes the view that anyone holding an appropriate title is an officer for purposes of Section 16(a). The staff, however, no longer expresses opinions on questions of officer status. These questions usually involve difficult assessments of fact which can best be made by the issuer and its counsel. For the same reason, the staff will not express a view as to whether a particular individual is in fact a director. Nevertheless, as an indication of staff analysis in this area, the following three hypotheticals are set forth.

(1) *Question:* Would the following persons be deemed to be "officers" for purposes of Section 16(a):
   (a) An assistant treasurer, assistant vice president or assistant comptroller?
   (b) The president of a wholly-owned subsidiary?
   (c) A vice president who has no significant duties, and who does not participate in the management of the company?

*Answer:* The persons named in (a) may be officers if they regularly perform a substantial part of the duties of the officers they assist. An assistant who performs only some of the duties of his superior would not normally be considered an officer, so long as those functions are performed under the supervision of his chief. Finally, assistants would not be considered officers if they regularly perform only routine administrative duties.[12]

The president referred to in (b) would not ordinarily be considered an officer under Section 16(a) since he is not an officer of the issuer.[13] If the vice president described in (c) is vice president in name only, and has no access to inside information, he is not an officer for purposes of 16(a).[14]

**B.** *Definition of Director*

Section 3(a)(7) of the Exchange Act defines the term "director" to mean any director of a corporation or any person performing similar functions with respect to an organization whether incorporated or unincorporated. As with the application of the term "officer," the determination whether a particular person is a director sometimes involves the evaluation of unusual or difficult facts. The staff will not express a view as to whether a particular person may be deemed to be a director.

(2) *Question:* Is a person who is an honorary director of an issuer, but does not attend board meetings and is inactive in the affairs of the issuer, considered to be a director for Section 16(a) purposes?

*Answer:* If an honorary director does not take part in formulating and deciding policy issues, and does not have access to inside information, he is not a director under Section 16(a).[15]

(3) *Question:* Can the term "director" include a person who designates another to be a director on a theory of deputization?[16]

*Answer:* Yes. A person who has the power, by agreement or otherwise, to name another to be a corporate director is likely to have the same sort of access to inside information by reason of that relationship as any other insider and should be considered a director for purposes of Section 16(a) of the Exchange Act.

*Illustration:* Company X lends Company Y a substantial amount of money in order for Company Y to complete its plans for expansion. One of the express terms of the loan agreement permits Company Y to designate a person to serve on the board of directors of Company Y. Company X designates its vice president to sit on Y's Board.

*Interpretation:* Company X may be considered a director for purposes of Section 16(a).

**C.** *Definition of Beneficial Ownership*

The Commission has never specifically defined the term "beneficial ownership" for purposes of Section 16(a) of the Exchange Act. However, some of the generally accepted indicia of beneficial ownership include: (1) the right to vote or

11      Although similar in thrust, this definition is somewhat narrower than the definition of 'executive officer' found in Items 3 and 4 of Regulation S-K [ 17 CFR 229.20.3 and .4, respectively]. It should also be noted that, in connection with the Commission's sunset review of existing rules and regulations, Rule 3b-2 is proposed to be amended to include an issuer's 'principal financial officer' and 'principal accounting officer' within the definitional scope of the term 'officer.' Such persons were previously covered by the rule although not specifically mentioned. See Securities Act Release No. 6333 (August 6, 1981) [46 FR 41971].

12      Securities Exchange Act Release No. 2687 (November 15, 1940) [5 FR 4501].

13      Letters re *CMI Investment Corp.* dated June 11, 1974 and *Associated Bank & Services, Incorporated dated June 23, 1971.*

14      *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston,* 566 F.2d 1119 (9th Cir. 1978).

15      While access to inside information is a key factor in determining insider status under Section 16, the staff has taken the view that the term 'director,' as defined in Section 303(5) of the Trust Indenture Act of 1939, does not include emeritus, honorary or advisory directors who are appointed rather than elected and who serve merely as advisors without any other customary responsibilities or duties of directors. See letter re *Wells Fargo Bank* dated June 22, 1981.

16      The existence of deputization is a factual question determined on a case-by-case basis. The United States Court of Appeals for the Second Circuit has held that a defendant corporation was in fact liable as a director under a deputization theory. *Feder v. Martin Marietta Corp.,* 406 F.2d 260 (2d Cir. 1969), *cert. denied, 396 U.S. 1036 (1970).* For a discussion of the factual elements that may establish deputization, see Wagner, *Deputization under Section 16(b): The Implications of Feder v. Martin Marietta Corporation,* 78 Yale L. J. 1151 (1969).

17      Rule 13d-3 [ 17 CFR 240.13d-3 ] under the Exchange Act sets out a very detailed definition of beneficial ownership for purposes of the reporting requirements under Section 13(d) and the Commission's tender offer rules. While the concepts of beneficial ownership under Section 16(a) and under Rule 13d-3 have much in common, the former stresses the economic benefit to be derived from the securities and the latter emphasizes the ability to control or influence the voting or disposition of the securities. As a result, different determinations of beneficial ownership under the section and rule are possible.

18      Securities Exchange Act Release No. 7824 (February 14, 1966) [31 FR 3175]. A person may also be regarded as the beneficial owner of securities held in the name of a spouse, minor children or other person, even though he does not obtain benefits substantially equivalent to ownership, if he can vest or revest title in himself at once or at some future time.

19      *Whiting v. The Dow Chemical Co.,* 523 F.2d 680 (2d Cir. 1975).

20      Letter to *Dean L. Buntrock and Elizabeth Buntrock Foundation* dated September 24, 1980.

21      Opinion of General Counsel, Securities Exchange Act Release No. 1965 (December 21, 1938) [11 FR 10971].

22      The names of the individual members of the partnership do not have to be set forth when the partnership itself files a Section 16(a) report.

23      The insider may, if he so desires, indicate in a footnote the extent of his individual interest in the transaction.

24      Questions (10) through (14), inclusive, should also be read in conjunction with the discussion of Rule 16a-8 [ 17 CFR