UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **ROBIN JOACHIM DARTELL, et al.,** Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>**TIBET PHARMACEUTICALS, INC., et al**<br><br>Defendant. | Civil Action No. 14-CV-3620-MCA-MAH<br><br><u>CLASS ACTION</u><br><br><u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENTER DEFAULT JUDGMENT AGAINST DEFENDANT TIBET PHARMACEUTICALS, INC.**</u> |

**TABLE OF CONTENTS**

I. CASE SUMMARY ...................................................................................................... 1

    A. Party Identification ............................................................................................ 1

    B. Procedural History ............................................................................................. 2

    C. Nature of the Claims Against Tibet .................................................................. 4

II. ARGUMENT ................................................................................................................ 6

    A. LEAD PLAINTIFFS AND THE CLASS ARE ENTITLED TO A DEFAULT JUDGMENT AGAINST TIBET ....................................................... 6

        1. Plaintiffs and the Class Are Substantially Prejudiced by the Delay Involved. ............................................................................................. 8

        2. Defendant Tibet Has No Litigable Defense. ........................................... 9

        3. Defendant Tibet's Delay Is Due To Culpable Conduct. ......................... 9

    B. THE CLASS IS ENTITLED TO $11,115,906.29 IN COMPENSATORY DAMAGES .......................................................................... 10

III. CONCLUSION .......................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chamberlain v. Giampapa*,
  210 F.3d 154 (3d Cir. 2000)............................................................................................. 8

*City Select Auto Sales, Inc. v. David/Radall Associates, Inc.*,
  No. 11-2658, 2015 WL 4507995 (D.N.J. July 23, 2015) ............................................... 10

*Comdyne I, Inc. v. Corbin*,
  908 F.2d 1142 (3d Cir. 1990).......................................................................................... 6, 8

*Daniek v. Duda*,
  No. 15-6032 (NLH)(AMD), 2016 WL 4435677 (D.N.J. Aug. 17, 2016) ..................... 6

*Dellecese v. Assigned Credit Solutions, Inc.*,
  No. 15-6678 (JBS/KMW), 2017 WL 957848 (D.N.J. Mar. 10, 2017) ............................ 6, 7, 8

*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*,
  722 F.2d 1319 (7th Cir. 1983) ....................................................................................... 10

*Glashofer v. N.J. Mfrs. Ins. Co.*,
  No. 15-3601 (RBK/AMD), 2016 WL 4204549 (D.N.J. Aug. 9, 2016)......................... 8

*Hanson v. Denckla*,
  357 U.S. 235 (1958)........................................................................................................ 7

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)........................................................................................................ 7

*Howard Johnson Int'l v. Patel*,
  No. 11-918 (WHW), 2011 WL 2148575 (D.N.J. May 31, 2011)...................................... 9, 10

*Husain v. Casino Control Comm'n*,
  265 F. App'x 130 (3d Cir. 2008) .................................................................................... 6

*In re MobileMedia Sec. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 1998) .................................................................................. 7

*Jeweled Cross Co. v. Buy-Rite Desings, Inc.*,
  No. 08-1821 (FLW), 2010 WL 143689 (D.N.J. Jan. 12, 2010)....................................... 9

*Joe Hand Promotions, Inc. v. Yakubets*,
  3 F. Sup. 3d 261 (E.D. Pa. 2014) .................................................................................... 8

*McGee v. Int'l Life Ins. Co.*,
  355 U.S. 220 (1957)........................................................................................................ 7

*Newman v. Axiom Worldwide*,
  No. 06–5564, 2010 WL 2265227 (D.N.J. June 2, 2010) ............................................... 9

*Petrucelli v. Bohringer and Ratzinger*,
  46 F.3d 1298 (3d Cir. 1995)............................................................................................ 8

*Pinker v. Roche Holdings Ltd.*,
  292 F.3d 361 (3d Cir. 2002)............................................................................................ 7

*Platypus Wear, Inc. v. Bad Boy Club, Inc.*,
 No. 08–2662, 2009 WL 2147843 (D.N.J. July 15, 2009) ........................................................ 10

*Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*,
 No. 11-896(WHW), 2012 WL 924385 (D.N.J. Mar. 19, 2012) ................................................ 9

*Rose Containerline, Inc. v. Omega Shipping Co., Inc.*,
 No. 10-4345 (WHW) 2011 WL 1564637 (D.N.J. Apr. 25, 2011) ............................................ 9

*Slover v. Live Universe, Inc.*,
 No. 08–2645, 2009 WL 606133 (D.N.J. Mar. 9, 2009) ........................................................... 10

*Stonebridge Bank v. Nita Props., LLC*,
 No. 09–5145, 2011 WL 380759 (D.N.J. Jan. 31, 2011) .......................................................... 10

*Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co.*,
 No. 11–7137, 2012 WL 3018062 (D.N.J. July 24, 2012) ......................................................... 6

**Statutes**

15 U.S.C. § 77k(e) ........................................................................................................................ 11

15 U.S.C. § 77v(a) ......................................................................................................................... 7

28 U.S.C. § 1331 ............................................................................................................................ 7

**Secondary Authorities**

10 C. Wright, A. Miller & M. Kane,
 *Federal Practice & Procedure*, § 2688 (2d ed. 1983) .............................................................. 6

**Rules**

Fed. R. Civ. P. 55(a) .................................................................................................................. 6, 9

Fed. R. Civ. P. 55(b) ........................................................................................................... 1, 6, 9, 10

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff Class Representatives apply for entry of default against Defendant Tibet Pharmaceuticals, Inc. ("Tibet") upon the Clerk of the Court's certificate of default entered on July 28, 2016 (Dkt. No. 218). This application is based on the following Case Summary, the Declaration of Laurence M. Rosen and exhibits thereto (filed contemporaneously herewith), all relevant portions of the files and records in the action, and on such other matters as may properly come before the court at the presentation and hearing of this application. As set forth below, Lead Plaintiffs and the Class seek judgment against Tibet for monetary damages in the amount of $11,115,906.29.

I.  **CASE SUMMARY**

   A. **Party Identification**

The Plaintiffs are Class Representatives Edmund Obasi, Robin Dartell, Lixin Wu, and Sean Carithers (collectively, "Plaintiffs") who bring claims on behalf of a certified class on behalf of themselves and all other persons or entities which purchased or otherwise acquired the common stock of Tibet in the Company's Initial Public Offering ("IPO") on January 24, 2011 or purchased Tibet stock thereafter in the stock market pursuant, and/or traceable to, the Company's Registration Statement and Prospectus issued in connection with the IPO during the period from January 24, 2011 to April 3, 2012, inclusive (the certified "Class Period") and who were damaged thereby.

Defendants are: (1) Tibet; (2) Tibet's officers Taylor Z. Guo, Hong Yu, and Sabrina Y. Ren; (3) directors Wenbo Chen, Youhang Peng, and Solomon Chen ("Directors"); (4) Tibet's auditor Acquavella, Chiarelli, Shuster, Berkower & Co. LLP ("Acquavella" or the "Auditor Defendant"); and (5) Tibet's underwriters, Anderson & Strudwick, Incorporated, ("A&S"),

Sterne Agee Group, Inc. ("Sterne Agee"), L. McCarthy Downs III, and Hayden Zou (collectively, the "Underwriter Defendants").

### B. Procedural History

The first complaint in this securities class action was filed on May 25, 2012 (Dkt. No. 1). On February 27, 2013 the Court appointed Edmund Obasi, Robin Dartell, Jude Shao, Lixin Wu, Jason and Jason Helton as lead plaintiffs and the Rosen Law Firm, P.A. as lead counsel (Dkt. No. 44). On May 1, 2013 Plaintiffs filed the Consolidated Amended Complaint ("Complaint") (Dkt. No. 47).

On May 15, 2014, Defendant Downs filed an involuntary petition against A&S under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Action") and the case was stayed as to A&S and its alleged successor in interest, Sterne Agee. On December 9, 2014, Plaintiffs filed a proof of claim in the Bankruptcy Action. On July 10, 2015, Lead Plaintiffs filed an Adversary Proceeding in the Bankruptcy Action against A&S and its trustee ("The Securities Class Action Adversary Proceeding"). A Settlement was reached in the Securities Class Action Adversary Proceeding on August 31, 2015, which was approved by the United States Bankruptcy Court for the Eastern District of Virginia in February 2016 (the "A&S Settlement").

On June 6, 2014, this Action, which had been pending in the Virgin Islands, was transferred to this Court (Dkt. No. 72). On February 20, 2015, the Court denied the Motions to Dismiss the Action filed by Defendants Acquavella, Zou, Sterne Agee, and Downs (Dkt. No. 132). Thereafter, the Parties commenced discovery. Plaintiffs issued requests for the production of documents as well as interrogatories, and issued several third party subpoenas. Defendants likewise issued document requests and interrogatories to Plaintiffs. In connection with class

certification, Defendants took the depositions of all five of the Lead Plaintiffs. In connection with discovery, Defendant Downs produced approximately 2,100 pages of documents; Sterne Agee produced 9,212 pages of documents; Zou produced 100 pages of documents; and Acquavella produced 4,064 pages of documents. In connection with discovery as to Acquavella, Plaintiffs engaged two separate accounting experts: one expert on U.S. GAAP, and one expert on accounting and auditing practices in China and audits of Chinese companies. Plaintiffs took the depositions of Defendants Downs and Zou and also issued deposition subpoenas to several former employees of Acquavella who were members of the Tibet audit team. This action settled as to Acquavella shortly before those depositions were scheduled to be taken, with the exception of the deposition of David Svoboda, a partner at Acquavella, who did not show up for the deposition.

On June 29, 2017 the Court issued an order finally approving the Settlement with Acquavella. (Dkt. No. 276).

After full briefing, on February 22, 2016, the Court entered an order granting Plaintiffs' motion for certification of the Class, appointing Obasi Investment Limited, Jude Shao, Robin Dartell, Lixin Wu, Jason Helton and Sean Carithers as Class Representatives and the Rosen Law Firm, P.A. as Lead Class Counsel (Dkt. No. 184).

On December 1, 2015, Plaintiffs filed a motion to compel non-party HSBC Bank USA to produce documents concerning the HSBC Hong Kong bank account statements and related document in order to discover the whereabouts of the proceeds of the IPO (which were transferred from an escrow account into an HSBC Hong Kong Bank account) (Dkt. No. 173). On February 29, 2016, the Court denied Plaintiffs' motion to compel (Dkt. No. 188). In order to obtain the bank records from HSBC Hong Kong, Plaintiffs filed a Motion for the Issuance of a

Request for Judicial Assistance under the Hague (which provides for the taking of discovery abroad) on April 29, 2016 (Dkt. No. 195). On May 6, 2016, the Court so-ordered Plaintiffs' request (Dkt. No. 200).

On June 30, 2016, Defendants Downs and Zou each filed summary judgment motions (Dkt. Nos. 207-211). On May 10, 2017, the Court entered an order granting in part and denying in part Downs and Zou's motions for summary judgment (Dkt. No. 269).

On July 28, 2016 the Clerk of the Court entered default as to Tibet (Dkt. No. 218).

### C. Nature of the Claims Against Tibet

This is a securities class action brought on behalf of investors who bought Tibet common stock in, or pursuant or traceable to, Tibet's January 24, 2011 Initial Public Offering ("IPO"), including persons who bought Tibet common stock between January 24, 2011, and April 3, 2012. Complaint ¶ 1. Tibet's IPO took place in January 2011, selling 3 million shares of its stock for $5.50/share and raising $16.5 million. *Id.* ¶ 18. Investors relied on Tibet's Registration Statement and Prospectus issued in connection with the IPO in purchasing Tibet stock. The financial statements contained in Tibet's IPO Registration Statement showed Tibet was in excellent health, with excellent growth and future prospects. Tibet's total sales for the year ended December 31, 2009 were shown as more than 47% above total sales for 2008 and net income for 2009 was shown as more than 55% above that for 2008. *Id.* ¶¶ 16, 92. The financial statements in the Registration Statement also showed that as of September 30, 2010, Tibet had $27 million in assets, including $8.3 million in cash, and that as of December 31, 2009, Tibet had $17.9 million in assets, including $4 million in cash.

Tibet's financial statements were patently false: at the time of the IPO, Tibet was insolvent having defaulted on $4.54 million of collateralized loans from the Agricultural Bank

4

of China, and a court judgment and enforcement order was entered against it as a result. *Id.* ¶ 51. The court action against Tibet took place while Tibet was in the process of registering its securities with the SEC in connection with the IPO. Subsequent to the IPO, Tibet's assets were frozen and publicly auctioned as a result of its default on the loans, clearly indicating that Tibet did not have the assets and cash as represented in the financial statements in the Registration Statement. Tibet was insolvent at the time of the IPO.

On June 6, 2011, Tibet's CEO resigned without explanation. *Id.* ¶ 66. Acquavella resigned as Tibet's auditor on September 6, 2011. *Id.* ¶ 67. On April 3, 2012, NASDAQ halted trading in Tibet's stock. *Id.* ¶ 68. Tibet's stock was delisted on April 27, 2012, and began trading over the counter on the Pink Sheets where it resumed trading at $0.35/share. *Id.* ¶ 70. Tibet's stock is still trading on the Pink sheets where it is effectively worthless, trading at fractions of a penny per share.

The Complaint asserts claims under Sections 11, 12, and 15 of the Securities Act of 1933. The Complaint alleges that Tibet's auditor, Acquavella failed to conduct a proper audit of Tibet's financial statements contained in the IPO registration statement. The Complaint also alleges that Tibet's underwriter, A&S, its lead underwriter and Tibet board observer Downs, and board observer Zou failed to conduct proper due diligence in connection with the Tibet IPO. The Complaint also alleges that Sterne Agee is the successor-in-interest to A&S. In sum, the Complaint alleges that all of the Defendants are liable for damages resulting from the materially false and misleading statements contained in Tibet's IPO Registration Statement. The claims against A&S and Sterne Agee have been resolved in bankruptcy court. The claims against Downs and Zou are continuing in this action. An entry of default has been entered as to Tibet.

II.     **ARGUMENT**

   A. **LEAD PLAINTIFFS AND THE CLASS ARE ENTITLED TO A DEFAULT JUDGMENT AGAINST TIBET**

Rule 55 creates a two-step process for the entry of a default judgment. *Husain v. Casino Control Comm'n,* 265 F. App'x 130, 133 (3d Cir. 2008). In the first step of this process, "a litigant must first obtain an entry of default from the Clerk of Court pursuant to Fed. R. Civ. P. 55(a)." *Dellecese v. Assigned Credit Solutions, Inc.,* No. 15-6678 (JBS/KMW), 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017). After a party obtains a default under Fed. R. Civ. P. 55(a), the party may then seek a default under Fed. R. Civ. P. 55(b). *Daniek v. Duda*, No. 15-6032 (NLH)(AMD), 2016 WL 4435677, at *1 (D.N.J. Aug. 17, 2016). The party must apply to the Court, rather than the clerk, for a default judgment if the party's claim is not for a sum certain. *Id.*

Here, the clerk has entered a default under Fed. R. Civ. P. 55(a) as to Tibet. (Dkt. No. 218). The clerk's entry of default is attached to the Rosen Declaration as Exhibit B. Plaintiffs now are seeking a default judgment from the Court under Fed. R. Civ. P. 55(b).

In granting default judgment, "a court must determine (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" *Dellecese*, 2017 WL 957848 at *2 (citing *Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co.*, No. 11–7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)). Upon default, the factual allegations of the complaint, except those related to damages, will be taken as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 2688 at 444 (2d ed. 1983)).

6

On July 9, 2012, Tibet was properly served with a copy of the summons and complaint by service its registered agent for service of process.  *See* Rosen Decl. ¶ 4; Ex. A.  As alleged in the Complaint, this Court has subject matter jurisdiction pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).  28 U.S.C. § 1331; Compl. ¶ 9.  The Court has personal jurisdiction over Tibet because Tibet "has directly solicited investment from the American market. A foreign corporation that purposefully avails itself of the American securities market has adequate notice that it may be haled into an American court for fraudulently manipulating that market."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371-72 (3d Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)); *see* Compl. ¶¶ 41-51.  Therefore Plaintiffs have plainly demonstrated "sufficient proof of valid service and evidence of jurisdiction."  *Dellecese*, 2017 WL 957848 at *2.

The undisputed facts alleged in Plaintiffs' Complaint likewise "present a sufficient cause of action."  *Id.*  The Complaint alleges that Tibet violated Sections 11 and 12(a)(2) of the Securities Act.  Compl. ¶¶ 117-136.  "To state a claim under Section 11, a plaintiff must allege: 1) The plaintiffs purchased securities traceable to an effective registration statement; 2) The defendants fall within the statutorily enumerated categories; and 3) the registration statement, at the time it became effective, contained a material misstatement or omission."  *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 923 (D.N.J. 1998) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82 (1983)).  Plaintiffs, in their undisputed Complaint, have alleged facts evidencing each and every of these elements as against Tibet.  *See* Compl. ¶¶ 41-83, 117-136.

Moreover, this Court has previously found that the Complaint alleged facts sufficient to defeat multiple motions to dismiss for failure to state a claim. Dkt. No. 101.  The standard for default judgment analysis is the same as on a motion to dismiss.  *See Joe Hand Promotions, Inc.*

*v. Yakubets*, 3 F. Sup. 3d 261, 271 (E.D. Pa. 2014) (citing *Comdyne I*, 908 F.2d at 1149). Therefore, as this Court has already found, the "unchallenged facts" in the Complaint "present a sufficient cause of action." *Dellecese*, 2017 WL 957848 at *2.

In determining whether default judgment is "proper," Third Circuit courts consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Court also considers the same factors that apply in assessing a motion to set aside entry of a default. *Glashofer v. N.J. Mfrs. Ins. Co.*, No. 15-3601 (RBK/AMD), 2016 WL 4204549, at *2 (D.N.J. Aug. 9, 2016) (citing *Chamberlain,* 210 F.3d at 164). Assuming the plaintiff demonstrates proper service, the decision to grant a motion for a default judgment lies in the sound discretion of the trial court. *See Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1303 (3d Cir. 1995) (Assuming that proper service of process was effected [], we can reverse the district court only if we find that it abused its discretion in denying the motion for a default judgment").

Here, all of the relevant factors favor entry of default judgment against Tibet.

1. **Plaintiffs and the Class Are Substantially Prejudiced by the Delay Involved.**

There is no possibility that Tibet will join the issues and permit Plaintiffs to litigate this case against it. Tibet has simply disappeared from this litigation. Tibet never appeared in this case. This case was filed over five years ago and Plaintiffs and the Class have received no recompense from Tibet for their losses incurred when Tibet's share price was decimated by the revelations of the patent falsehoods contained in Tibet's financial statements.

If a default judgment is not entered, "plaintiffs will be prejudiced … because they will not be able to seek damages for their injuries due to defendant's continuing refusal" to appear and

8

participate in this case. *Newman v. Axiom Worldwide*, No. 06–5564, 2010 WL 2265227, at *5 (D.N.J. June 2, 2010); *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896(WHW), 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012); *Jeweled Cross Co. v. Buy-Rite Desings, Inc.*, No. 08-1821 (FLW), 2010 WL 143689, at *1 (D.N.J. Jan. 12, 2010) ("Plaintiff has been prejudiced by Defendant's failure to participate in the litigation").

### 2. Defendant Tibet Has No Litigable Defense.

Procedurally, the grounds for default are clearly established and it is indisputable that Tibet has been properly served. Here, the clerk has entered default under Fed. R. Civ. P. 55(a) as to Tibet. Plaintiffs now are seeking a default judgment from the Court under Fed. R. Civ. P. 55(b). On July 9, 2012, Tibet was properly served with a copy of the summons and complaint by service its registered agent for service of process. *See* Rosen Decl. ¶ 4. Copies of an executed returned summons and an affidavit of service were filed with the Court on August 14, 2012 and are attached to the Rosen Declaration as Exhibit A. *Id.*

Notwithstanding proper service upon Tibet, Tibet has failed to file an answer to the Complaint, appear in the case, or offer any defense, and "the facts asserted in the complaint do not contain any information that would provide the basis of a meritorious defense." *Rose Containerline, Inc. v. Omega Shipping Co., Inc.*, No. 10-4345 (WHW) 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011). Therefore the Court must assume that Tibet has no litigable defenses available. *Howard Johnson Int'l v. Patel*, No. 11-918 (WHW), 2011 WL 2148575, at *4 (D.N.J. May 31, 2011) (citing *Rose Containerline*, 2011 WL 1564637 at *3).

### 3. Defendant Tibet's Delay Is Due To Culpable Conduct.

Finally, there is no question that Tibet's delay constitutes culpable conduct. Tibet was properly served with notice of the Action, yet has failed to appear to answer the Complaint. Such a failure to appear and defend is indicative of culpable conduct. *Howard Johnson*, 2011

WL 2148575 at *4 ("There is no evidence before the Court 'that defendants' failure to respond to plaintiff's complaint was caused by anything other than defendants' own culpability and willful negligence'") (quoting *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08–2662, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009)). Tibet is presumed to have acted culpably because it has "failed to answer, move, or otherwise respond." *Stonebridge Bank v. Nita Props., LLC*, No. 09–5145, 2011 WL 380759, at *6 (D.N.J. Jan. 31, 2011); *Slover v. Live Universe, Inc.*, No. 08–2645, 2009 WL 606133, at * 2 (D.N.J. Mar. 9, 2009).

### B. THE CLASS IS ENTITLED TO $11,115,906.29 IN COMPENSATORY DAMAGES

A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, *inter alia,* to determine the amount of damages or establish the truth of the plaintiff's allegations. Fed. R. Civ. P. 55(b)(2)(B)-(C). *City Select Auto Sales, Inc. v. David/Radall Associates, Inc.*, No. 11-2658, 2015 WL 4507995, at *4 (D.N.J. July 23, 2015). However, in this case, a hearing on damages is not necessary because the amount claimed is "liquidated or capable of ascertainment from definite figures." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323-24 (7th Cir. 1983). In cases such as these, "the Court may rely upon detailed affidavits, without further evidentiary inquiry." *City Select*, 2015 WL 4507995, at *4.

Damages in this case arise under Section 11 of the Securities Act and are calculated as the difference between the price an individual paid for Tibet stock (but not exceeding the IPO price, which was $5.50/share) and: 1) the value of the stock at the time this lawsuit was brought, or 2) the price of the stock at the time it was sold before the lawsuit was brought, or 3) the price of the stock when it was sold after the lawsuit was brought, but before a judgment (if that

10

amount is less than the difference between the purchase amount and the price at the time the suit was brought). *See* 15 U.S.C. § 77k(e).

In approving the settlement with Acquavella, the Court approved the notice to Class Members, and plan of allocation, which sets forth the formula for calculating the overall trading losses for Class Members. Additionally, the Court also approved the appointment of Strategic Claims Services ("SCS") as the claims administrator. *See* Declaration of Josephine Bravata of SCS, attached as Exhibit D to the Rosen Declaration (the "Bravata Dec."), ¶¶3, 4.

Per the Court-approved plan of allocation, the Claims Administrator calculated the compensable loss per share ("Recognized Loss") of each Authorized Claimant (i.e. each Class Member with a Recognized Loss that satisfies the requirements approved by the Court) based upon the measure of damages set forth in Section 11 of the Securities Act described above. Bravata Dec. ¶5.

Accordingly, the total amount of Recognized Losses of each Authorized Claimant is direct evidence of the actual damages Plaintiffs and the Class suffered consistent with the measure of damages set forth in Section 11 of the Securities Act. Therefore, the amount of damages Plaintiffs seek in the default judgment is equal to the Recognized Losses calculated by Plaintiffs' claims administrator based upon the claims received from the Class Members in connection with Plaintiffs' settlement of the claims in this action with the Auditor Defendant, Acquavella. Bravata Dec. ¶¶7-8.

Utilizing the Court approved plan of allocation, the claims administrator calculated that Class Members have filed claims with $11,115,906.29 in Recognized Losses. Rosen Decl. ¶ 12. This calculation should be accepted by this Court in entering a default judgment in the amount of

$11,115,906.29, because it is direct evidence of the actual losses suffered by Plaintiffs and the Class consistent with the measure of damages set forth in Section 11 of the Securities Act.

### III. CONCLUSION

For the foregoing reasons Plaintiffs respectfully request and order (a) entering a default judgment for the Class against Defendant Tibet; (b) holding Defendant Tibet liable for damages in the amount of $11,115,906.29, plus interest on such amount on the rate allowed by law; and (c) for such other relief as this Court may deem just and proper.

Dated: January 18, 2018
New York, New York

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence M. Rosen*

Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, New Jersey 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Sara Fuks, Esq. (*pro hac vice*)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*