Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBIN JOACHIM DARTELL, et al., individually and on behalf all others similarly situated,

*Plaintiffs*,

v.

TIBET PHARMACEUTICALS, INC., et al.,

*Defendants*.

Civil Action No. 14-3620

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of a motion for reconsideration and certification for an order for interlocutory appeal brought by Defendants L. McCarthy Downs III and Hayden Zou. D.E. 271. Defendants object to the Court's Opinion and Order issued on May 10, 2017. D.E. 268, 269. Plaintiffs filed a brief in opposition, D.E. 273, to which Defendants replied. D.E. 275. The Court reviewed the submissions in support and in opposition, and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion for reconsideration is **GRANTED in part** and **DENIED in part** but their motion for certification for interlocutory appeal is **GRANTED**.

I.  **BACKGROUND**

On May 10, 2017, the Court issued an Opinion and an Order granting in part and denying in part Defendants' motions for summary judgment. D.E. 268, 269. Defendants argue that the Court committed clear error by (a) mistakenly overlooking Defendant Zou's sale of Tibet pre-IPO

shares, (b) miscalculating the number of Tibet pre-IPO shares Zou sold in February and March of 2012, and (c) not ruling on Defendant Downs' argument that the Third Circuit has rejected Plaintiffs' tracing argument. Def. Brf. at 3-4. Defendants further argue that the Court should reconsider (a) its finding that Defendants are potentially liable under 15 U.S.C.A. § 77k ("Section 11") for false or misleading information included in a registration statement and (b) its finding that Downs addressed the due diligence defense in only an underwriter, not board observer, context to prevent manifest injustice from occurring. *Id.* at 5-13. Finally, Defendants argue that an interlocutory appeal is warranted in this case. *Id.* at 13-15.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

In the District of New Jersey, motions for reconsideration can be made pursuant to Local Civil Rule 7.1(i). The rule provides that such motions must be made within fourteen days of the entry of an order. Defendants have complied with this time requirement. Substantively, a motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004) (citations omitted). Allowing a motion for reconsideration to go forward is an "extraordinary remedy," to be granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) (citations omitted).

A motion for reconsideration does not entitle a party to a second bite at the apple. Therefore, a motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2-3 (D.N.J. July 30, 2015); *see*

*also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988). Moreover, a motion for reconsideration is not an opportunity to raise matters that could have been raised before the original decision was reached. *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

### B. Certification for Interlocutory Appeal

The statute governing interlocutory appeals, 28 U.S.C. § 1292(b), provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order[.]

Thus, a district court may certify a non-final order for interlocutory appeal where the order "(1) involve[s] a controlling question of law, (2) offer[s] substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately [would] materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (internal quotation marks omitted). A controlling question of law is one in which, either: (1) "if erroneous, would be reversible error on final appeal;" or (2) is "serious to the conduct of litigation, either practically or legally." *Id.* at 755. "[Q]uestions about a district court's application of facts of the case to established legal standards are not controlling questions of law for the purposes of section 1292(b)." *Morgan v. Ford Motor Co.*, No. 06-1080, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007).

A substantial ground for difference of opinion must arise "out of genuine doubt as to the correct legal standard." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996).

3

Mere disagreement with the district court's ruling is not enough. *Id.* Rather, "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Therefore, "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.*

Lastly, certification would materially advance the ultimate termination of the litigation "where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate trial; or (3) issues that would make discovery more costly or burdensome." *F.T.C. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014). This element does not require a movant to establish that an appeal would *guarantee* termination of the litigation, but rather "requires the court to analyze whether an immediate appeal *may* materially advance the termination of the litigation." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, No. 13-2382, 2013 WL 6506570, at *3 (M.D. Pa. Dec. 12, 2013) (emphasis in original).

The burden is on the movant to demonstrate that all three requirements are met. *Piacentile v. Thorpe*, No. 12-7156, 2016 WL 3360961, at *2 (D.N.J. June 8, 2016). However, even if all three criteria are met, "the district court may still deny certification, as the decision is entirely within the district court's discretion." *Id.* Further, Section 1292(b) "is to be used sparingly and only in exceptional circumstances that justify a departure from the basic policy of postponing review until the entry of the final order." *Acosta v. Pace Local I-300 Health Fund*, No. 04-3885, 2007 WL 1074093, at *1 (D.N.J. Apr. 9, 2007) (internal quotation marks omitted); *see also Kapossy*, 942 F. Supp. at 1001 (stating that interlocutory appeal is "used sparingly" since it is "a

deviation from the ordinary policy of avoiding piecemeal appellate review of trial court decisions which do not terminate the litigation") (internal quotation marks omitted).

## III. LEGAL ANALYSIS

### A. Motion for Reconsideration

#### i. Defendant Zou's sale of pre-IPO Tibet shares

Defendants argue that the Court committed clear error when calculating the total number of pre-IPO Tibet shares Zou sold in February and March 2012. Defendants assert that the Court correctly found that Zou sold 83,400 shares in February 2012 and 26,700 shares in March 2012 but incorrectly indicated that those numbers equal 100,100 shares instead of 110,100. Def. Brf. at 4. Further, Defendants claim this mathematical error impacts the standing of Lead Plaintiff Wu. *Id.* Defendants claim that Wu no longer has standing because the 110,100 shares Zou sold in 2012 equates to 7,755 more shares than the total number of shares Wu purchased. *Id.*

Plaintiffs admit that the correct sum of Zou's 2012 sales of Tibet pre-IPO shares is 110,100. Pl. Opp. at 4. However, Plaintiffs disagree that this error has any impact on Wu's standing. *Id.* Plaintiffs argue that Wu still has standing because he purchased all 102,345 of his shares between February 28, 2012 and March 5, 2012, while Zou, as of March 5, 2012, had only sold a total of 83,400 Tibet pre-IPO shares. *Id.*

The Court agrees with the parties that the number of Zou's 2012 sales of Tibet pre-IPO shares is 110,100, not 100,100. However, the Court disagrees with Defendants' contention that the calculation impacts Lead Plaintiff Wu's standing. Wu purchased his Tibet shares from February 28, 2012 to March 5, 2012. Affidavit of Scott Cargill, Page ID. 4322-23; D.E. 213-17. Zou sold 83,400 of his Tibet pre-IPO shares on February 24, 2012. Zou Motion for Summary Judgment ("Zou MSJ"), Statement of Material Facts not in Dispute ("Zou SOMF") ¶¶ 67-68; D.E.

212. Zou did not allege that he sold any more shares until March 6, 2012, one day after Wu finished buying shares. *Id.* Thus, as of March 5, 2012, Wu had purchased more shares than Zou had sold. Therefore, the Court will not reconsider Wu's standing.

Defendants also argue that the Court committed clear error when it "overlooked Zou's sales of pre-IPO Tibet shares that were made throughout 2011 and totaled 89,895 shares." Def. Brf. at 3. Defendants claim that these 89,895 shares were in addition to the 110,100 Tibet pre-IPO shares that Zou sold in 2012, which the Court considered in its May 2017 Opinion. *Id.* Plaintiffs, however, counter that "Zou failed to include the 2011 Tibet stock sales in the statement of material facts submitted in connection with his motion for summary judgment and instead, only submitted them in connection with his reply papers." Pl. Opp at 3. Plaintiffs, therefore, conclude that Zou cannot raise these new facts at the reconsideration stage.

The Court agrees with Plaintiffs. The 89,895 shares that Zou now points to were raised for the first time in his reply regarding his motion for summary judgment. *Compare* Zou MSJ, Zou SOMF ¶¶ 67-68; D.E. 212, *with* Affidavit of Hayden Zou ("Zou Aff.") ¶ 11; D.E. 247. Zou did not rely on those shares in his initial motion for summary judgment and did not show good cause as to why he omitted them. *See Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015). Thus, the Court properly did not consider the additional shares in its May 2017 Opinion. Reconsideration is not warranted.

### ii. Plaintiffs' Tracing Theory

Defendants next assert that the Court did not rule on the arguments raised by Defendant Downs concerning the Third Circuit's stance on Plaintiffs' tracing argument. Def. Brf. at 4. Plaintiffs counter that Defendants are, once again, rehashing the tracing argument that Judge Arleo previously ruled on and the Court declined to disturb. Pl. Opp. at 5. Further, Plaintiffs point out

that the Court discussed Third Circuit case law when ruling on Defendants' objection to Plaintiffs' tracing theory. *Id.*

Defendants may not re-argue their disagreement with Plaintiffs' tracing theory at this stage. In the May 2017 Opinion the Court noted that Defendants did not make a motion for reconsideration as to Judge Arleo's finding regarding traceability. The Court noted that Defendants were merely "attempt[ing] to rehash an issue already decided by a judge in this district." Opinion, D.E. 268 at 13. Further, the Court did address the Third Circuit's discussion of tracing shares to allegedly false or misleading registration statements. In a lengthy footnote, the Court discussed the Third Circuit's language in *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006), which cited approvingly to *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992), while also suggesting that a Section 11 plaintiff has standing if he can demonstrate that his shares are traceable to the allegedly false and misleading registration statement. *Id.* at 13, n. 10. Thus, it is not the case that the Court failed to address Defendants' argument against Plaintiffs' tracing theory. The Court denies reconsideration.

### iii. Section 11 of the Securities Act of 1933 and Due Diligence

Defendants claim that the "Court's formulation for determining liability under Section 11(a)(3) is the antithesis of narrowly construing the categories of potential defendants that could face strict liability." Def. Brf. at 8. Defendants, further, argue that "Downs set forth detailed and unrebutted evidence in his summary judgment papers establishing his due diligence defense, which is governed by the same standard whether acting as an underwriter or Board Observer." *Id.* at 12.

Plaintiffs reject Defendants' contentions as mere attempts to reargue their original points. As to the Court potentially holding Defendants liable under Section 11, Plaintiffs argue that "Defendants again cite the same authorities they relied upon in their prior briefs submitted to the

Court." Pl. Opp. at 7. Therefore, Plaintiffs assert that since Defendants' arguments are in essence the same as in their summary judgment papers "the Court should once again reject Defendants rehashed reading of the statute." *Id.* Regarding Defendants' due diligence claim, Plaintiffs state that "Defendants' argument is meritless because it is unsupported in fact and law and should therefore be rejected." *Id.* at 11.

The Court will not reconsider either ruling. It is well settled that a court's granting of a motion for reconsideration is an extraordinary remedy. *See NL Indus., Inc.*, 935 F. Supp. at 516. Defendants have not met their burden of showing that reconsideration is warranted in this instance. Defendants essentially re-argue the positions that they previously raised in their summary judgment papers, and they fail to meet any of the three categories which support a motion for reconsideration.

For the foregoing reasons, Defendants' motion for reconsideration is granted in part and denied in part.

## B. Certification for Interlocutory Appeal

Defendants also argue, in the alternative, that an interlocutory appeal of the Court's May 2017 Opinion is appropriate. Defendants ask the Court to certify for appeal the question of whether "Board Observers, such as [Defendants], can be held liable as a matter of law when there are actual directors named in the registration statement and in light of the description of Board Observers in the prospectus." Def. Brf. at 14. Defendants believe that certification is appropriate here because the Court significantly departed from the limited existing case law on this question. *Id.* Given this departure, Defendants argue that the Third Circuit should have an opportunity to consider and resolve the appropriate legal standard for determining Defendants' potential liability under Section

11. *Id.* Further, Defendants assert that resolution of this question would materially advance the ultimate termination of the litigation. *Id.* at 14-15.

Plaintiffs argue that certification of a question for interlocutory appeal is inappropriate here since Defendants failed to meet their burden of establishing (1) a controlling question of law that (2) offers substantial ground for difference of opinion and (3) would potentially materially advance the ultimate termination of the litigation. Pl. Opp. at 11. Plaintiffs first assert that no controlling question of law exists here because in the May 2017 Opinion, the "Court applied its interpretation of the statute to the facts in the record." *Id.* at 12. Thus, Plaintiffs believe the question presented would be a mixed question of law and fact and, consequently, inappropriate for interlocutory review. *Id.* at 13. Second, Plaintiffs claim that Defendants have not met their burden of demonstrating that a substantial ground for difference of opinion exists over the question presented. Plaintiffs argue that "Defendants do not cite a single case from any court, let alone one in the Third Circuit, adopting a different interpretation of the phrase 'person performing similar functions' as a direction within the context of Section 11." *Id.* at 14. Third, and finally, Plaintiffs claim that certification of the question presented for interlocutory appeal would delay, rather than aid, the efficient resolution of the case. *Id.* at 15. Plaintiffs assert that "the case is ready for trial" and that allowing the case to proceed to trial would be the most helpful action to take towards termination of the litigation. *Id.*

The question of what it means to be a "person performing similar functions" as a director within the context of Section 11 is a novel one (although the controlling statute has been in place for decades). Indeed, as the Court discussed in its May 2017 Opinion, the parties cited to only two cases touching upon this question, *Mersay v. First Republic Corp. of Am.*, 43 F.R.D. 465 (S.D.N.Y. 1968) and *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353 (S.D. Fla. 2001). After

9

examining both cases, the Court found neither persuasive and engaged in its own analysis due to lack of binding authority. Opinion, D.E. 268 at 18-21.

While courts use interlocutory appeal under Section 1292(b) sparingly, the question presented here meets the three requirements for interlocutory appeal. The question of Defendants' Section 11 liability is a controlling question because if the Third Circuit disagrees with the Court's analysis there would be reversible error on final appeal. Further, permitting interlocutory appeal would materially advance the ultimate termination of the litigation. The Court has already granted summary judgment in favor of Defendants on all counts except with respect to potential Section 11 liability. Thus, if the Third Circuit disagreed with the Court's finding of liability, this litigation would terminate.

As noted, other circuits have not ruled in a manner inconsistent with the Court's ruling on the Section 11 liability question presented here. In fact, no circuit has apparently addressed the question. Nevertheless, the Ninth Circuit has recognized that novel questions of first impression may provide a sufficient basis upon which to certify a question for interlocutory appeal. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding that "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent"). The Second Circuit, however, has espoused a contrary view. *See In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (holding "that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion" to warrant certification pursuant to Section 1292(b)).

While the Court conducted a careful statutory analysis before holding that Defendants may be liable under Section 11, it did so without guidance from the Third Circuit, or any other circuit.

The Third Circuit's resolution of what the correct legal standard is regarding liability of non-directors under Section 11 would help facilitate the development of law. To be clear, the Court is not exercising its discretion merely because it is a question of first impression in this circuit. The Court is confident in its underlying analysis, but also recognizes that, given that Section 11 is narrowly construed, reasonable jurists may take a different view. Thus, because the question presented is controlling, novel, and dispositive, the Court finds it appropriate to certify the question for interlocutory appeal.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion (D.E. 271) for reconsideration is **GRANTED** to correct the calculation error in the March 10, 2017 Opinion, D.E. 268, but is otherwise **DENIED** and their motion for certification for interlocutory appeal is **GRANTED**. However, in the accompanying Order, the Court certifies a question different than that proposed by Defendants. An appropriate Order accompanies this Opinion.

Dated: February 21, 2018

_John Michael Vazquez, U.S.D.J._