## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBIN JOACHIM DARTELL, et al.,
individually and on behalf all others
similarly situated,

    *Plaintiffs*,

    v.

TIBET PHARMACEUTICALS, INC., et
al.,

    *Defendants*.

Civil Action No. 14-3620

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendants L. McCarthy Downs III and

Hayden Zou's ("Defendants") motion to dismiss certain lead Plaintiffs for lack of standing

pursuant to Federal Rule of Civil Procedure 12(b)(1). D.E. 286. Obasi Investment Limited, Robin

Dartell, and Lixin Wu (the "Challenged Plaintiffs") filed a brief in opposition, D.E. 291, to which

Defendants replied. D.E. 292. Challenged Plaintiffs then filed a motion to strike the Affidavit of

Ming Zhu, which forms the basis for Defendants' motion to dismiss. D.E. 289. Defendants filed

a brief in opposition, D.E. 295, to which the Challenged Plaintiffs replied. D.E. 297.[1] The Court

reviewed the submissions in support and in opposition, and considered the motions without oral

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 286) will be referred to as "Def. MTD."
Plaintiffs' brief in opposition (D.E. 291) will be referred to as "Pl. Opp." Defendants' reply brief
(D.E. 292) will be referred to as "Def. Rep." Challenged Plaintiffs' motion to strike (D.E. 289)
will be referred to as "Pl. MTS." Defendants' brief in opposition (D.E. 295) will be referred to
as "Def. Opp." Challenged Plaintiffs' reply brief (D.E. 297) will be referred to as "Pl. Rep."

argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion to dismiss is **DENIED** without prejudice to permit jurisdictional discovery, and the Challenged Plaintiffs' motion to strike is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court's May 10, 2017 Opinion granting in part and denying in part Defendants' motion for summary judgment, includes a detailed recounting of the background of this matter. D.E. 268. To the extent relevant to this motion, the Court incorporates the factual and procedural history into this Opinion and summarizes the critical facts and procedural history here.

This matter involves a class action brought by lead Plaintiffs for alleged misrepresentations in Defendant Tibet Pharmaceuticals, Inc.'s ("Tibet") Initial Public Offering ("IPO") registration documents. Lead Plaintiffs brought suit under Section 11 of the Securities Act of 1933 against a number of individuals and entities who were involved in the IPO. Plaintiffs claim that Tibet's IPO registration statements and prospectus materially misrepresented Tibet's financial health and profitability.

The parties have been actively litigating this matter since 2012. In June 2016, the present Defendants moved for summary judgment. D.E. 207, 210. The Court granted the motion in part and denied it in part. D.E. 268, 269. Of relevance here, the Court found that:

> [u]nder Section 11, "any person acquiring a security *issued pursuant to* a false or misleading registration statement may recover damages." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992) (emphasis added) (citing 15 U.S.C. § 77k). Plaintiffs bear the burden of proof to establish that their shares were issued from the IPO. *See id.* . . . Tracing occurs when a plaintiff shows that "his or her shares were issued under/registered to the allegedly defective registration statement—regardless of whether the shares were acquired directly from the issuer or in the aftermarket." *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013). Thus, "[t]racing may be established either through proof of a direct chain of title from the original offering to the plaintiff . . . or through

2

> proof that the plaintiff bought her shares in a market containing only shares issued pursuant to the allegedly defective registration statement." *In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 31 n.1 (brackets in original omitted).

May 2017 Opinion ("2017 Op.") at 11-12; D.E. 268. The Court then found that the lead Plaintiffs could not trace their purchased shares to the IPO. *Id.* at 12.

Nevertheless, the Court determined that four lead Plaintiffs had standing. The parties agreed that Defendant Zou sold 110,100 pre-IPO shares in 2012. *Id.*[2] Therefore, lead Plaintiffs Wu, Obasi, and Dartell, who purchased more shares than Zou sold, still had standing. 2017 Op. at 12. Because "even if any of these individual Plaintiffs bought every share sold by Zou, each would still have additional shares that could not have been Zou's shares." *Id.* Lead Plaintiff Carithers also had standing because he purchased 7,000 shares before Zou sold his shares. *Id.*

On August 18, 2017, Defendants filed the current motion to dismiss the Challenged Plaintiffs - Wu, Obasi, and Dartell - for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). D.E. 268. Defendants claim that they became aware that in addition to Zou, another early stockholder in Tibet, RMCC Investments LLC ("RMCC"), sold 177,288 pre-IPO Tibet shares in the secondary market from May 13, 2011 to February 27, 2012. Def. MTD at 2-3. Ming Zhu, a manager of RMCC, provided details of how and when the pre-IPO shares were sold in the secondary market. *Id.* Based on Zhu's information, Defendants believe that the Challenged Plaintiffs can no longer directly trace their shares to IPO. Defendants reason that if RMCC sold 177,288 pre-IPO shares in 2011 and 2012 and Zou sold 173,318 pre-IPO shares in 2011 and 2012, then the combined number of 350,606 non-IPO shares exceeds the number of shares the

---

[2] The Court inadvertently stated that the number of pre-IPO shares Zou sold in 2012 was 100,100, instead of the correct amount of 110,000. The Court corrected this error in an Opinion addressing Defendants' Motion for Reconsideration. February 2018 Opinion at 5; D.E. 312.

Challenged Plaintiffs purchased during the relevant time period. *Id.* As a result, Defendants continue, the Challenged Plaintiffs cannot show that their shares were not simply re-purchases of the pre-IPO shares available in the secondary market. *Id.* at 4.

## II.    LEGAL STANDARD

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). However, for a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). The burden is on the plaintiff to prove the Court has jurisdiction. *Id.*

Here, Defendants present a factual attack on the Court's jurisdiction. As a result, the Court will consider and weigh evidence beyond the pleadings to determine whether it has jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

## III.   LAW & ANALYSIS

As noted, Defendants claim that the information provided in Zhu's affidavit, concerning RMCC's sale of Tibet shares in the secondary market, destroys the Challenged Plaintiffs' jurisdictional standing. Def. MTD at 2-4. The Challenged Plaintiffs, in opposition, argue that Defendants' motion to dismiss is untimely because Defendants have already filed Answers. Pl. Opp. at 2 (citing *Doe v. Boyertown Area Sch. Dist.*, 10 F. Supp. 3d 637, 648-49 (E.D. Pa. 2014)). Further, the Challenged Plaintiffs claim that Defendants' motion actually contests their lack of *statutory*, not *jurisdictional*, standing. Pl. Opp. at 4. The Challenged Plaintiffs conclude that Defendants have not raised an issue impacting the Court's subject-matter jurisdiction. *Id.* In reply, Defendants reply that the Challenged Plaintiffs are mistaken, and that they are, in fact, raising a 12(b)(1) argument directly impacting Article III standing. Def. Rep at 1-5.

Plaintiffs seeking to establish Article III standing "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). The first element, an injury-in-fact, requires Plaintiffs to show "'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Finkelman*, 810 F.3d at 193 (quoting *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 278 (3d Cir. 2014)). The second element, causation, "requires the alleged injury to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Finkelman*, 810 F.3d at 193 (quoting *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137–38 (3d Cir. 2009)). The Third Circuit

has explained that Article III's causation requirement is "akin to 'but for' causation in tort and may be satisfied 'even where the conduct in question might not have a proximate cause of the harm.'" *Finkelman*, 810 F.3d at 193 (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013)). The third, and final, element, redressability, requires Plaintiffs "to show that it is 'likely, as opposed to merely speculative,' that the alleged injury will be redressed by a favorable decision." *Finkelman*, 810 F.3d at 194 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

Here, a critical issue is whether Defendants have, in fact, raised an Article III standing issue. The parties have framed the issue as one of constitutional versus statutory standing. In *Arbaugh v. Y&H Corp.*, Justice Ginsburg framed the same issue as one of federal-court subject-matter jurisdiction versus "the essential ingredients of a federal claim for relief." 546 U.S. 500, 503 (2006). In other words, the Supreme Court addressed the difference between the elements of a case and subject-matter jurisdiction. The Court held that an "objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by any party, or by the court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Id.* at 506. Because subject-matter jurisdiction "involves a court's power to a hear a case, [it] can never be forfeited or waived." *Id.* at 514 (quoting *United States v. Cotton,* 535 U.S. 625, 630 (2002)). "By contrast, the objection that a complaint 'fail[s] to state a claim upon which relief can be granted,' Rule 12(b)(6) may not be asserted post-trial." *Id.* at 507. In other words, an objection for failure to state a claim upon which relief can be granted may be waived if not raised in a timely fashion.

*Arbaugh* involved a Title VII suit, in which, the trial court, post-verdict, granted a motion to dismiss for lack of subject-matter jurisdiction on the basis that the defendant company had fewer

6

than fifteen employees. *Id.* at 504. The defendant company had not raised this defense pre-verdict. *Id.* The Supreme Court reversed, finding that Title VII's employee-numerosity requirement was an element of a case, rather than a jurisdictional requirement, and had been raised too late. *Id.* Specifically, the *Arbaugh* Court found that the employee-numerosity requirement was in a provision of Title VII that did "'not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394 (1982)). The Court in *Arbaugh* noted that, "[o]f course, Congress could make [Title VII's] employee-numerosity requirement 'jurisdictional,' just as it has made an amount-in-controversy threshold an ingredient to subject-matter jurisdiction . . . [b]ut neither 1331, nor Title VII's jurisdiction provision . . . specifies any threshold ingredient akin to 28 U.S.C. 1332's monetary floor." *Id.* at 515-16. Therefore, the Supreme Court held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisidictional in character" and reversed and remanded the matter. *Id.* at 516.

The Court finds that Defendants have sufficiently raised an Article III standing issue. As the Third Circuit held in *Finkelman*, Plaintiffs' complained of injury must be fairly traceable to the challenged actions of Defendants. 810 F.3d at 193. Such traceability[3] is needed for causation, and consequently, is needed for an Article III injury-in-fact. Here, lead Plaintiffs allege that their injury-in-fact arose from Defendants' misrepresentations in Tibet's IPO registration statements

---

[3] Part of the confusion in the current motion may be due to the fortuitous circumstance that Article III's standing requirement and the Section 11 violation both require "traceability." May 2017 Opinion ("2017 Op.") at 11-12; D.E. 268. However, just because the substantive cause of action requires traceability does not mean that it converts the Article III standing "traceability" requirement from a jurisdictional requirement to an element of the offense. Instead, due to the nature of the claim, traceability is required for both jurisdictional standing and for the cause of action.

and prospectus. Thus, if lead Plaintiffs' shares are not from the IPO, but rather are from pre-existing share, their alleged injury fails standing causation.

The Third Circuit's decision in *Finkelman* illustrates the requirements for alleging the element of causation. In *Finkelman*, the named plaintiff Josh Finkelman, bought two tickets to Super Bowl XLVIII on the resale market for an allegedly unfair high price. Along with another frustrated consumer, Finkelman brought suit against the National Football League ("NFL") on the theory that its ticket prices violated New Jersey law. 810 F.3d at 188-89. The Third Circuit found that Finkelman did not have standing to pursue his claim because he had chosen to not enter the NFL ticket lottery. *Id.* at 198.

Judge Fuentes reasoned as follows:

> Irrespective of whether the NFL withheld tickets in violation of the Ticket Law—a question we do not reach here—Finkelman chose to buy his tickets on the secondary market. As a result, there was always a *zero* percent chance that he could procure a face-price ticket [from the ticket lottery]. In this sense, any harm that Finkelman suffered is properly attributed not to the NFL, but rather to his own decision not to enter the ticket lottery.
> . . .
> The causation element of standing requires a plaintiff to allege facts sufficient to show that his or her injury is "*fairly traceable*" to the alleged wrongdoing of the defendant. We have explained that *traceability requires*, at a minimum, that the defendant's purported misconduct was a "but for" cause of the plaintiff's injury. And, if we treat Finkelman's injury-in-fact as his inability to obtain face-price tickets to the Super Bowl, *that* injury is simply *not traceable* to the NFL's withholding of tickets given that Finkelman sought tickets only in the resale market.

*Id.* (first, second, and fourth emphases added).

Like *Finkelman*, Defendants have adequately raised an issue with the Challenged Plaintiffs' ability to demonstrate Article III standing causation. The Court is sympathetic to the Challenged Plaintiffs' objection to Defendants bringing new information to the Court's attention

at the eleventh hour, almost six years after this case was filed and after summary judgment motions. And Defendants provide no explanation as to why they could not have discovered the information earlier. Nevertheless, the requirements of Article III standing are "unyielding" and it is a "bedrock obligation" of a federal court to assure that it has subject-matter jurisdiction over the matters before it. *See Finkelman*, 810 F.3d at 189, 193. As the Supreme Court reiterated in *Arbaugh*, subject-matter jurisdiction is not waivable and can be raised at any time.

However, the Court is not prepared to make a definitive ruling on the standing issue without giving the Challenged Plaintiffs an opportunity to take discovery. Defendants have exclusively relied on the submission from Zhu, and the Challenged Plaintiffs have not had an opportunity to challenge the purported facts. Accordingly, discovery is reopened for the limited purpose of allowing the parties to conduct discovery on whether the Challenged Plaintiffs have Article III standing in this matter. *See Cevdet Aksut Ogullari Koll, STI v. Cavusoglu*, No. CV 14-3362, 2017 WL 3013257, at *3 (D.N.J. July 14, 2017) ("Rule 16 vests the Court with broad discretion to control and manage discovery.").

For these reasons, and for good cause shown,

IT IS on this 27th day of July, 2018,

**ORDERED** that Defendants' motion to dismiss (D.E. 286) is **DENIED without prejudice** pending the outcome of discovery; and it is further

**ORDERED** that discovery is re-opened as to the limited issue of whether the Challenged Plaintiffs have Article III standing in this matter; and it is further

**ORDERED** that challenged Plaintiffs' motion to strike (D.E. 289) is **DENIED** because

the affidavit raises sufficient facts concerning the Court's subject-matter jurisdiction, which is not waivable.

                                                   _____
                                                  John Michael Vazquez, U.S.D.J.