**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN JOACHIM DARTELL, et al., individually and on behalf all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>TIBET PHARMACEUTICALS, INC., et al.,<br><br>*Defendants.* | Civil Action No. 14-3620<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Lead Plaintiffs' unopposed motion for default judgment as to Defendant Tibet Pharmaceuticals, Inc. ("Tibet") pursuant to Fed. R. Civ. P. 55(b)(2). D.E. 335. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is **GRANTED**.

I. **INTRODUCTION**[1]

In this class action, Lead Plaintiffs allege that Tibet made material misrepresentations in its initial public offering ("IPO") registration documents. Plaintiffs claim that Tibet's IPO registration statements and prospectus materially misrepresented Tibet's financial health and

---

[1] The Court derives the facts from Plaintiffs' Amended Complaint, D.E. 50 ("Am. Compl."), as well as the affidavits and exhibits submitted in conjunction with Plaintiffs' motion for default judgment. *See Trs. of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

profitability. The Court's May 10, 2017 Opinion granting in part and denying in part Defendants' Hayden Zou and McCarthy Downs, III's, motions for summary judgment, includes a detailed recounting of the background of this matter. D.E. 268. To the extent relevant to this motion, the Court incorporates the factual and procedural history from the summary judgment Opinion here.

After summary judgment, on August 18, 2017, Zou and Downs filed a motion to dismiss certain Lead Plaintiffs for lack of standing. D.E. 286. Then, on January 18, 2018, Lead Plaintiffs filed a motion for default judgment as to Tibet.[2] D.E. 308. On June 4, 2018, the Court denied Lead Plaintiffs' motion for default judgment without prejudice as to Tibet because Zou and Downs were still actively litigating this matter. D.E. 318. In denying the motion, the Court stated that Plaintiffs could re-file their motion for default judgment after the matter is resolved as to all other remaining Defendants. *Id.* On September 11, 2019, the remaining claims against Zou and Downs were dismissed with prejudice. D.E. 334. Lead Plaintiffs subsequently filed this renewed motion for default judgment as to Tibet. D.E. 335. In addition, Lead Plaintiffs voluntarily dismissed their claims against the remaining Defendants, Hong Yu, Taylor Z. Guo, Sabrina Y. Ren, Wenbo Chen, and Solomon Chen. D.E. 344.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be

---

[2] The Clerk of the Court entered default as to Tibet on July 28, 2016 as a result of its failure to plead or otherwise defend. D.E. 218.

2

disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## III. ANALYSIS

### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Lead Plaintiffs' claims are brought under the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77a, *et seq.*, thereby raising a federal question.

The Court also has personal jurisdiction over Tibet because the 1933 Act allows for nationwide service of process. *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 119 (3d Cir. 2020) (citing *United States v. Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d 974, 982 (3d Cir. 1992); 15 U.S.C. § 77v(a)). The Third Circuit has observed as follows:

3

> Where Congress has spoken by authorizing nationwide service of process, . . . the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits. . . . Following this reasoning, the district courts within this Circuit have repeatedly held that a national contacts analysis is appropriate when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision.

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002).

To ensure that an exercise of personal jurisdiction comports with due process, "a court should look at the extent to which the defendant 'availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States.'" *Id.* at 370 (quoting *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 295 (3d Cir. 1985)). "In assessing whether a commercial entity has availed itself of the privileges of a forum's laws, jurisdiction is proper if the defendant has taken 'action . . . purposefully directed toward the forum State.'" *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality op. of O'Connor, J.)). "Once minimum contacts have been established, we assess whether the exercise of personal jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). In a case such as this, the focus of the inquiry is on the "burden on the defendant, . . . the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, . . . [and] the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Id.* at 370-71 (internal quotation marks and citation omitted). The Court, thus, may aggregate Tibet's nationwide contacts to determine whether Tibet purposefully availed itself of the privilege of conducting activities in the American securities market, and thereby established the requisite minimum contacts with the United States.

4

Here, Tibet has sufficient minimum contacts with the United States. Lead Plaintiffs maintain that Tibet purposefully availed itself of the American market by registering with the SEC and selling its securities to American investors. Lead Plaintiffs allege that Tibet's IPO registration statement contained intentional and materially false statements. "[P]ersonal jurisdiction [is] appropriate where a foreign corporation has directly solicited investment from the American market." *Pinker*, 292 F.3d at 371. Nor is there any doubt that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. As discussed in *Pinker*, it is not unfair nor inconsistent with traditional notions of substantial justice and fair play to subject a defendant "to personal jurisdiction in a United States court when it has taken affirmative steps to market its [securities] to the American investing public, and when it is alleged to have made material misrepresentations about its business practices that have artificially inflated the market price of those [securities]." *Id.* at 373. Consequently, this Court is satisfied that it has specific personal jurisdiction over Tibet.

**B. Service**

"In entering a default judgment, a court must [also] determine whether . . . the defendants were properly served . . . ." *Wyndham Hotel Grp. Can., ULC v. 683079 Ontario Ltd.*, No. 17-4000, 2018 WL 2078704, at *6 (D.N.J. May 2, 2018). Proper service upon a defendant is a predicate to a court's exercise of personal jurisdiction. *Trzaska v. L'Oréal USA, Inc.*, No. 15-02713, 2017 WL 6337185, at *3 (D.N.J. Dec. 12, 2017).

In this motion for default judgment, Lead Plaintiffs simply state that Tibet was properly served in this matter through service of its registered agent for service. Plf. Br. at 8. Tibet is a British Virgin Islands corporation that has no physical presence in the United States. Am. Compl. ¶¶ 23-24. Federal Rule of Civil Procedure Rule 4(h)(2) provides that a foreign corporation may

5

be served outside of the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f) provides as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > (C) unless prohibited by the foreign country's law, by:
> > >
> > > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > > >
> > > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). Therefore, "for Plaintiff's service on Defendant to be valid, it must comport with the three possible means of service set forth in Rule 4(f)." *Trzaska*, 2017 WL 6337185, at *5.

Here, Lead Plaintiffs mailed a copy of the summons and complaint via certified mail return receipt requested to Mossack, Fonseca & Co. (B.V.I.) LTD ("Mossack, Fonseca"), which is located in the British Virgin Islands. Mossack, Fonseca is Tibet's registered agent. Declaration of Laurence Rosen ("Rosen Decl.") ¶ 4. The proof of service provides that "recept [sic] returned evidencing delivery to Defendant." *Id.* Ex. A at 2.

6

Plaintiffs argue that "Rule 4(f) provides that service can be made 'by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention").'" D.E. 341 at 2. Plaintiffs then assert that the United Kingdom has signed the Hague Convention and has "included" the British Virgin Islands, the place under whose law Tibet is organized, "to the Hague Convention." *Id.* at 3. Plaintiffs cite the Supreme Court's decision in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017) for the proposition that "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* at 1508. In applying this test, Plaintiffs contend that their mailing of the complaint and summons to Tibet's registered agent with a return receipt, in addition to filing "the executed summons on Tibet, thereby proving service under Fed. R. Civ. P. 4(1) [sic][,] . . . complied with all requirements including U.S. and international law. Service by post is proper in the British Virgin Islands under the Hague Convention and thus, proper in this case." D.E. 341 at 5-6.

Such an argument, however, assumes either that (1) Rule 4(f)(1) by itself permits such service, or (2) the Rule by itself does not permit such service, but it is permissible when it is "applied" to the Hague Convention. Neither argument is persuasive. As to the first, "Rule 4(f)(1) does not provide a basis for service by mail." *LT Game Int'l Ltd. v. DEQ Sys. Corp.*, No. 13-4593, 2013 WL 5536195, at *2 (D.N.J. Oct. 7, 2013). In fact, the Rule does not itself affirmatively empower or prescribe any method of service—it merely permits litigants to serve a complaint and summons in a manner that is reasonably calculated to give notice and finds its origin and authorization in an international agreement. *See* Fed. R. Civ. P. 4(f)(2). In addition, the Hague

7

Convention does not provide for service by mail. "Article 10(a) simply providess that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents through postal channels." *Water Splash*, 137 S. Ct. at 1513 (alterations in original). "[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* Contrary to Plaintiffs' arguments, therefore, the Hague Convention, as applied to Rule 4(f)(1), "permits" service by mail only in the sense that it passively *allows* such service—the Convention does not "affirmatively *authorize*[] service by mail." *Id.* Plaintiffs, therefore, must look somewhere else, besides Rule 4(f)(1) or Section 10(a) of the Convention, for affirmative authorization.

Plaintiffs argue that "service via post on Tibet's Registered Agent was authorized by the British Virgin Islands." D.E. 341 at 4. Again assuming, *arguendo*, that Plaintiffs' reading of the law of the British Virgin Islands is correct, this does not end the inquiry because Plaintiffs appear to misread *Water Splash*. For the sake of an analysis under Rule 4(f)(1), it is not the underlying law of the defendant's domicile which "authorizes" in the relevant sense but that of the forum in which suit was brought. "Any affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed." *Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir. 2004).

The question, therefore, is not whether the law of the British Virgin Islands authorizes service by mail but whether the otherwise applicable law of the forum authorizes such service. Here, the otherwise applicable law is the Federal Rules of Civil Procedure. *Wyndham*, 2018 WL 2078704, at *12.

8

Plaintiff's only possible avenue for proper service is Rule 4(f)(2)(A). As detailed above, Rule 4(f)(2)(A) provides that a defendant outside the United States may be served "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction . . . ." Thus, to comply with Rule 4(f)(2)(A), Plaintiffs must prove that service by registered mail is "expressly permitted by foreign laws." *Tatung Co. v. Shu Tze Hsu*, No. 13-01743, 2014 WL 11514476, at *4 n.2 (C.D. Cal. March 10, 2014). The foreign law, in this case, is that of the British Virgin Islands.

According to the State Department, "[t]he UK is a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters. . . . The United Kingdom did not object to Article 10(a) of the Convention and does permit service via postal channels." United Kingdom Judicial Assistance Information Bureau of Consular Affairs, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/UnitedKingdom.html (accessed on Feb. 5, 2020). Additionally, "[t]he United Kingdom of Great Britain and Northern Ireland has extended the application of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters to: . . . [the] British Virgin Islands . . . ." *Id. See also Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc.*, No. 06-421, 2007 WL 1057382, at *10-11 (S.D. Ohio April 5, 2007) ("the Civil Procedure Rules of the United Kingdom expressly permit service by mail. . . . Therefore, the Court concludes that service of the complaint on Defendant Metcalfe complied with both the Hague Convention and the law of the United Kingdom."). Accordingly, it appears that service is permissible by mail to a putative defendant in the British Virgin Islands.

For the more specific proposition that courts of general jurisdiction in the British Virgin Islands allow service by mail upon a limited company such as Tibet, Lead Plaintiffs provide a link to the Rules of Procedure promulgated by the Eastern Caribbean Supreme Court. *See* D.E. 341 at 4 n.3. Lead Plaintiffs argue that service upon Tibet's registered agent was proper under Rule 5.7(b), which provides that "Service on a limited company may be effected – by sending the claim form by telex, FAX or prepaid post or cable addressed to the registered office of the company . . . ." This Rule, however, is inapposite, as Plaintiffs attempted to serve Tibet by sending process to Tibet's registered agent, not its registered office. Rule 5.7(b), therefore, cannot be Plaintiffs' avenue into this Court.

Rule 5.7(e), however, allows Plaintiffs to serve Tibet "in any other way allowed by any enactment." The BVI Business Companies Act of 2004 appears to be such an enactment, as Section 101(1)(b) provides that "[s]ervice of a document may be effected on a company by addressing the document to the company and leaving it at, or sending it by a prescribed method to the office of the company's registered agent." D.E. 341 at. 4 (citing https://www.offshorebvi.com/downloads/BVI_Business_Companies_Act_2004.pdf) (emphasis deleted). Assuming its accuracy and veracity, the Court accepts that Section 101(1)(b) allows Plaintiffs to serve Tibet by mailing process to Tibet. As a result, it appears that by mailing the complaint and summons to Tibet's registered agent, Lead Plaintiffs complied with the law of the British Virgin Islands and thus satisfied Rule 4(f)(2)(A). The Court, therefore, finds that Tibet was served in a manner that comports with Rule 4(f)(2)(A).

### C. Sufficiency of Plaintiffs' Causes of Action and Proof of Damages

Next, the Court must determine whether the complaint states a proper cause of action. The Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36.

#### i. Claims under the 1933 Act

Lead Plaintiffs claim that Tibet violated Sections 11 and 12(a)(2) of the 1933 Act. "To state a claim under Section 11, a plaintiff must allege: 1) the plaintiffs purchased securities traceable to an effective registration statement; 2) [t]he defendants fall within the statutorily enumerated categories; and 3) the registration statement, at the time it became effective, contained a material misstatement or omission." *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 923 (D.N.J. 1998) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983)). "To state a claim under Section 12(a)(2) a plaintiff must allege 1) defendants offered or sold a security; 2) by the use of any means of communication in interstate commerce; 3) through a prospectus or oral communication; 4) by making a false or misleading statement of a material fact or by omitting to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading: 5) plaintiff did not know of the untruth or omission; and 6) defendants knew, or in the exercise of reasonable care, could have known of the untruth or omission." *Id.* at 924 (citing *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 687-88 (3d Cir. 1991)). "Similar to Section 11, a plaintiff need not plead fraud, reliance or scienter on the part of the defendants to succeed under Section 12(a)(2)." *Id.* (citing *In Re Donald J. Trump Sec. Litig.*, 7 F.3d 357, 369 n.10 (3d Cir. 1993)).

As Lead Plaintiffs point out, "this Court has previously found that the Complaint alleged facts sufficient to defeat multiple motions to dismiss for failure to state a claim." D.E. 335 at 8

11

(citing D.E. 101). The Court accepts the argument that it is the law of the case that the Complaint states a proper cause of action as to Tibet.

### ii. Damages

Section 77k(e) of the 1933 Act provides that in a "suit authorized under subsection (a)[,]" the measure of damages shall be "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought . . . ." 15 U.S.C. § 77k(e).

In this instance, Plaintiffs argue that they should be awarded a total judgment of $11,115,906.29. D.E. 335 at 11. Plaintiffs support this amount by pointing to the calculations made by the court-appointed claims administrator, who calculated damages in a manner "based upon the measure of damages set forth in Section 11 of the" 1933 Act. *Id.* at 12. Accordingly, Plaintiffs sufficiently prove their damages, and the Court grants compensatory damages of $11,115,906.29.

### B. Default Judgment Factors

Before entering default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors weigh in favor of entering default judgment. First, considering that Defendant never

responded in this matter, "Defendant has put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the complaint indicating that a meritorious defense is available. Next, without a default judgment, Plaintiffs have no other means to seek relief for the harm allegedly caused by Defendant. As a result, Plaintiffs will be prejudiced if default judgment is not entered. *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016). Finally, Defendant's failure to answer, without providing any reasonable explanation, permits the Court to draw an inference of culpability on its part. *Id.* As a result, the Court finds that default judgment is warranted.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment (D.E. 335) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: March 24, 2020

John Michael Vazquez, U.S.D.J.

13